THE PEOPLE, *ex rel.* Peter Lorillard, *vs.* THE SUPERVISORS OF THE COUNTY OF WESTCHESTER.

THE PEOPLE, *ex rel.* John David Wolfe, *vs.* THE SAME DEFENDANTS.

In an alternative mandamus the relator must set forth the facts upon which he relies for the relief sought; so that the facts alleged may be admitted or traversed, and that the defendant may at any time after a return and before a peremptory mandamus is awarded, object a want of sufficient title in the relator to the relief sought, or show any other defect in substance.

A general assertion that injustice has been done to the relators, in assessing their property; or that that they have been unjustly assessed, and that the defendants—the board of supervisors—have refused to correct the erroneous assessments, is not sufficient to entitle the relators to any relief. They should go beyond that, and state the particulars, in order that it may be seen, from them, that the charge was well founded, and that the defendant may be able specifically to answer the complaint.

Writs of mandamus cannot be supported by the papers on which they were granted.

The People *v.* The Supervisors of Westchester.

Assessors have the power to correct an assessment (except to increase an estimate of property after the roll has been deposited with one of their number for inspection,) at any time before their roll is delivered to the supervisor.

An affidavit presented to assessors, for the purpose of procuring a reduction of an assessment, can only be sworn to before the assessors, or one of them. A justice of the peace has no authority to administer an oath, in such a case.

The applicant for a reduction of the assessed valuation of his personal estate must make affidavit that the value of the personal estate owned by him, after deducting his just debts, &c. does not exceed a certain specified sum. The statute does not sanction a statement upon *belief.*

An affidavit presented by a *trustee* for the purpose of procuring a reduction of the assessment upon property held by him in trust, which merely states the value of each of the estates specified in the schedule annexed to such affidavit, and alleges that the statements are just and true according to the best of the deponent's knowledge and belief, is defective.

Such affidavit should specify the value of the property possessed by the applicant, or under his control by virtue of the trust, after deducting the just debts due from him and the stock held by him in incorporated companies liable to taxation in that capacity.

When assessors have deposited a copy of the assessment roll with one of their number, and given public notice that they have done so, and that they will meet at a specified time and place to review their assessments, and a person complaining of the assessment in respect to his property, fails to produce at that time, his affidavit or other proof, showing that his property has been over estimated, but subsequently, and before the assessors have delivered the assessment roll to the supervisor, such person produces to the assessors affidavits which are not in conformity with the statute, it is not compulsory upon the assessors to reduce the assessment.

They have at least a discretion on the subject; and with the exercise and result of that discretion, the supreme court will not interfere.

The supreme court is not obliged to issue the writ of mandamus in all cases when it has the requisite power; but may exercise a discretion as well in refusing as in granting it.

After an assessment roll has been delivered to the board of supervisors, at their annual meeting, and been finally acted upon by them, and a warrant has been issued to the collector of the town, with a copy of the assessment roll annexed, commanding him to collect the taxes apportioned according to such roll, the roll has passed from the jurisdiction of the supervisors, and they have not the power to correct it.

A mandamus will not be granted where it would be unavailable, from a want of power in the defendants to perform the duty required.

THESE causes came before the court on demurrer to the returns made by the defendants to the writs of alternative mandamus, issued against them, upon the application of the relators,

respectively.　The mandamus issued in the case of Peter Loril-lard alleged that the relator had been unjustly assessed the sum of $769,41 for his personal property, and the sum of $1020,80 for property held by him as trustee or executor, amounting in the aggregate to $1790,21.　And the writ commanded the defendants to cause the assessment against the relator to be corrected; and if the same should not be corrected, that the amount thus erro-neously assessed against him, with the interest thereon, be levied and collected from the town and county of Westchester; or in default thereof, that the defendants should show cause why they could not or would not do the same.　The writ, in the case of Wolfe, alleged that the relator had been unjustly assessed the sum of $1318,93, for his personal property, and $1758,60 for property held by him as executor or trustee, making in the ag-gregate of unjust taxation against him the sum of $3077,53. The command of the writ was in the same form as in the other case.　To the writ issued on the application of Lorillard the de-fendants returned as follows:

That at the session of the board of supervisors of the county of Westchester, in November 1849, the said Peter Lorillard did apply to the board of supervisors to reduce the assessment of his personal property and of the personal property of him as executor or trustee, made by the assessors of the town of West-chester, in said county, from the sum of sixteen hundred thousand dollars to the sum of seven hundred and eighty-five thousand six hundred and thirty-six dollars; and thereupon Robert R. Morris, Esquire, the supervisor of the said town of Westchester, presented a written statement in regard to such assessment, signed by the assessors of the town of Westchester, in the words and figures following, to wit: "To ROBERT R. MORRIS, Esquire, supervisor of the town of Westchester. SIR: The assessors of this town desire to submit to you, and also to the board of supervisors of the county of Westchester, the following statement in justification of their refusal to lower the assessment of Peter Lorillard and John D. Wolfe, in ac-cordance with the annexed affidavits prepared and submitted to us by them.　The assessors met together and transacted their

business, pursuant to the statute in such case made and provided; and on the day appointed to hear the objections of 'all persons feeling themselves aggrieved,' the said Peter Lorillard and John D. Wolfe appeared before us and examined the assessment roll, and made no *legal* objections to the amounts assessed against them individually and as trustee, &c. but presented to the board of assessors a certificate purporting to be from one of the assessors of the fifteenth ward in the city of New-York, certifying that they were assessed on the books of the assessors of said ward for personal property; at the same time requesting us to erase their names from the assessment roll of our town, which we unanimously refused to do, on the ground that said Lorillard and Wolfe were legal residents of this town, having voted therein at the last November election, and were liable to be assessed here, and not liable in the city of New-York. After having corrected our assessment roll, in accordance with the statute, at the time appointed in the notice, and after the lapse of several days, viz, on the 31st day of August, about 7 o'clock in the evening, they, the said Lorillard and Wolfe, tendered for acceptance to the assessors four affidavits sworn to before Thomas Bolton, Esq., justice of the peace, copies of which said affidavits are hereto annexed, the original being in the hands of the assessors, with one exception, which was the affidavit of Peter Lorillard, &c. And we further represent to you and to the honorable board of supervisors of the county, that we refused to reduce the assessment as originally placed on the assessment roll against the said Peter Lorillard and John D. Wolfe: 1st. Because the affidavits were not made in due legal form, or in accordance with the strict requirements of the law. 2d. Because they were not presented to the undersigned at the proper time prescribed by the statute. 3d. That said affidavits were incomplete, vague, and contradictory, as by reference to the said affidavits will more fully and at large appear. The undersigned also further believe that they had no legal right, under the statute, to alter, correct or reduce the personal assessment of the said John D. Wolfe and Peter Lorillard, by affidavit or

otherwise, after the expiration of the time pursuant to the notice given, according to the statute in such case made and provided. All of which is respectfully submitted. Dated Westchester, September 1st, 1849." The return alleged that to this statement were annexed copies of the affidavits referred to therein as being annexed thereto, and of which true copies were given in the affidavits annexed to the return. And that after hearing counsel on behalf of the applicants, and also on behalf of the said assessors, a resolution was passed by the said board of supervisors in relation thereto, in the words following, to wit: " Resolved, that in relation to the personal assessment of Messrs. Lorillard and Wolfe, in the town of Westchester, this board is not legally invested with any power to act in the premises and therefore dismiss the subject." And the supervisors alleged that they could not reduce the assessment of the personal property of the said Peter Lorillard, and of the personal property of him, as executor or trustee, made by the assessors, from the sum of $1,600,000, to the sum of $785,636, because they had no power or authority by law to do so. And that, *for the same reason*, they could not cause the said assessment against the said Peter Lorillard to be corrected; nor could they legally cause the sum of $769,41, alleged to be erroneously assessed against said Lorillard for his own personal property, and the sum of $1020,80 alleged to be erroneously assessed against him, as executor and trustee, with the interest thereon, to be levied and collected from the town and county of Westchester. And the supervisors further alleged that it would appear, by reference to the affidavit of Peter Lorillard, annexed to the petition upon which the writ of mandamus against them was ordered, and upon reference to the affidavit of Harvey Kidd, Claiborne Ferris, and Frederick Ryer, the said assessors, which last mentioned affidavit was annexed to the return, that the said Peter Lorillard and the said assessors were at issue upon certain facts, important to the due consideration of the legality of the assessments made by the said assessors of the personal property of the said Peter Lorillard, and of the personal property of him as executor or trustee.

And the supervisors insisted that they had no power legally and properly to investigate the truth of the said issue. But they, upon information from the said assessors, denied that the said assessments were erroneously made.

A similar return was made to the writ issued on the relation of Wolfe. The people demurred to these returns respectively, because it appeared from the said returns, that the supervisors did refuse to correct the assessment mentioned in the said writs, and by their written decision set forth in the said returns made such decisions on the ground that they were not legally invested with any power to act in the premises, and therefore dismissed the subject; and that the said writs were not obtained or applied for on the ground that the said supervisors had decided erroneously on the merits of the application, but that they refused to hear the application altogether. And the people further set forth, as cause of demurrer, that the supervisors in their returns not only admitted the material allegations contained in the said writs, viz. that they refused to correct the assessments, but instead of denying the said allegations or setting ting forth any facts by way of answer to the said writs, they gave the affidavits of the assessors of the said town of Westchester, being the evidence of supposed facts, but not the facts themselves, as they should have done, wherefore the people, by their relator, claimed that a peremptory writ might issue and that the relator might have the relief set forth in his petition.

*C. W. Sandford,* for the relators.

*Wm. W. Scrugham,* for the respondents.

S. B. STRONG, J.   The relators set forth in their respective writs of alternative mandamus that they have severally been unjustly assessed in specified amounts, both individually and as trustees or executors, and that the defendants have refused to correct the assessments; and the writs require the defendants to correct the assessments, or, if the same shall not be corrected, to cause the amounts erroneously assessed to be levied and col-

lected from the town and county of Westchester; or to show cause why they cannot or will not " do the same." The defend- ants have in their answers stated why they could not or would not correct the assessments, or cause the amounts for which the defendants were as they alleged erroneously assessed (taxed) to be levied upon or collected from, the town and county. The relators, deeming the reasons assigned by the defendants to be insufficient, have each interposed a demurrer.

It was decided by the late court for the correction of errors that the relator must set forth in the alternative mandamus the facts upon which he relies for the relief sought; so that the facts alleged may be admitted or traversed, and that the defend- ant may, at any time after a return and before a peremptory mandamus is awarded, object a want of sufficient title in the relator to the relief sought, or show any other defect in sub- stance. (*The Commercial Bank of Albany* v. *The Canal Commissioners*, 10 *Wend.* 25.) The same rule was laid down and formed the basis of the decision in a late case in the court of appeals. (*The People* v. *Ransom*, 2 *Comst.* 490.) The code has no reference to writs of mandamus, and therefore the same principle is still applicable.

It is also settled that the relator can obtain only the relief which is demanded in the alternative writ, or, possibly, some part of it. (*The People* v. *The Supervisors of Dutchess County*, 1 *Hill*, 50. *The People* v. *The Board of Supervisors of Westchester County*, 12 *Barb.* 446.)

In the cases under consideration the only allegations upon which the relators call for relief, are that they have been un- justly assessed, and that the defendants have refused to correct the erroneous assessments. Now a general assertion that injus- tice has been done to the relators, in assessing their property, is not sufficient to entitle them to any relief. They should have gone beyond that, and stated the particulars, in order that it might be seen from them that the charge was well founded, and that the defendants might be enabled specifically to answer the complaint. The words unjust and wrongful may be very proper to qualify facts stated, but they cannot supply their place. The

pleader probably supposed that the writs might be supported by the papers on which they were granted, and which are copied in the demurrer books. But that is not the rule. The writs do not refer to those papers, nor state their substance. In the case which I have cited from the 10th Wendell, the chancellor (Walworth) says: "On a careful examination I am satisfied that these affidavits [on which the writ was granted] formed no part of the record, and could not legally have been taken into consideration by the supreme court, in deciding the demurrer to the return of the defendants to the peremptory mandamus." In the case of *The People* v. *Ransom*, which I have before cited, it was said by the judge who gave the opinion of the court that "it is not ordinarily necessary in pleading to set out copies of the requisite papers. All that is required is that a pleading should state enough to show that the papers on which the pleader relies, are such as, in a case like the present, the statute requires."

But if these papers could be considered, as a part of the writs, or at all, they would not show that the relators are entitled to any relief. It is not now pretended that the relators were not taxable in the town of Westchester. The assessors of that town had therefore the requisite jurisdiction. The complaint presented by the affidavits is that the personal property of the relators, liable to assessment, was overrated. That, if true, was a wrong for which the statute supplies an adequate remedy. The assessors are required to deposit a fair copy of the assessment roll with one of their number, and to give timely public notice that they have done so, and that they will meet at a specified time and place to review their assessments. At such meeting it is competent for any person complaining to present his own affidavit, stating the value of his property liable to taxation, or to adduce other satisfactory proof of such value, and then the assessors are bound to reduce the assessment to the amount specified in the affidavit, or established satisfactorily by other evidence. (1 *R. S.* 392, 3, 4.) In the cases under consideration, the assessment roll was duly deposited and the requisite notice was given. The relators did not produce any

The People *v.* The Supervisors of Westchester.

affidavit, or offer any proof, showing that their property had been over-estimated, at the time and place specified in the notice. The assessors supposed that they were not authorized to receive such affidavit or proof afterwards, and before they had delivered their roll to the supervisor. In this I think they erred. There is nothing in the statute restricting their action in this respect, to the time and place mentioned in the notice; and it seems to me that their general power to make the assessment, involves the right to correct it, (except possibly to increase the estimate of the property of any one after the roll has been deposited with one of them, for the purpose of inspection, which would then be manifestly unjust,) at any time before their roll is delivered to the supervisor. The relators did submit affidavits, after the time limited in the notice, but the difficulty in their way is that those papers were not such as the statute requires. The 25th section provides that the affidavits shall be made before the assessors, or one of them; whereas those presented by the relators were sworn to before a justice of the peace. The statute conferring upon justices of the peace the authority to administer oaths expressly excepts "such as are required by law to be taken before particular officers." (2 *R. S.* 284, § 49. *Blatchford's General Stat. of N. Y.* 490.) The affidavits differ, too, in some material matters, from the requirements of the statute. (1 *R. S.* 392, § 15.) Mr. Lorillard swears that his personal property, liable to taxation by the laws of this state, does not exceed the sum of four hundred and fifty thousand dollars, after payment of his just debts and liabilities, *to the best of his belief.* Mr. Wolfe deposes that the personal estate owned by him and liable to taxation under the laws of this state, does not exceed the sum of two hundred thousand dollars, according to the best of his knowledge and *belief.* The statute in force at the time provided that the applicant for a reduction of the assessed valuation of his personal estate should make affidavit that the value of the personal estate owned by him, after deducting his just debts and his property invested in the stock of incorporated companies liable under the same chapter to taxation on their capital, *did not exceed* a certain sum to

be specified in the affidavit. The statute does not sanction a statement upon belief, but in effect requires the applicant to fix upon a sum from his knowledge of his own circumstances which he can conscientiously swear, in positive terms, is the utmost extent of his personal estate liable to taxation. The statute requires the applicant to swear that the value of his entire personal estate, after certain deductions, does not exceed the specified amount. But in the cases under consideration each swears as to the value of his personal estate, liable to taxation under the laws of this state; thus making himself the judge of what is so liable. As to that, there is room for mistake; whereas there is much more certainty as to the entire value and the amount of specified deductions. Mr. Wolfe does not particularize any deductions, but Mr. Lorillard mentions debts and liabilities. Debts are mentioned in the statute, but liabilities are not. They may be much more extensive than the just debts.

The affidavits presented by the relators as trustees are equally defective. The 16th section of the act requires that when a trustee applies for a reduction he shall specify by affidavit the value of the property possessed by him, or under his control, by virtue of the trust, after deducting the just debts due from him and the stock held by him in incorporated companies liable to taxation in that capacity. (1 *R. S.* 392.) Mr. Lorillard merely states the value of each of the estates specified in the schedule annexed to his affidavit, and swears that the statements are just and true, according to the best of his knowledge and belief. And Mr. Wolfe swears that he is a co-trustee in different estates in which Mr. Lorillard is the acting trustee; and that is all. No doubt these gentlemen have acted conscientiously in presenting these affidavits, and if they had prevailed, the public would not have suffered by their omission to comply substantially with the requisitions of the statute. But if the noncompliance should be tolerated in these instances the rule must be general, and many cases might and probably would occur where it might operate more unjustly. It is better to require a full compliance (at least in substance) with statutory provisions, and particularly when they are of extensive application, and relate to the

The People *v.* The Supervisors of Westchester.

acts of inferior officers.   Injustice may be done, occasionally, by a uniform adherence to the rule, but much more would be caused by its practical abrogation.

Clearly it was not compulsory upon the assessors, under the circumstances, to reduce the assessments.   They had at least a discretion on the subject, and with the exercise and result of that discretion this court ought not to interfere.   Public policy forbids it.   This court is intrusted with the power of the court of king's bench in England, in granting writs of mandamus ; and as to that court it is laid down that it is not obliged to issue the writ in all cases when it has the requisite power, but herein may exercise a discretionary power as well in refusing as in granting it; as where the end of it is merely to try a private right, where the granting of it would be attended with manifest hardships and difficulties.   (*Jac. Law Dic. tit. " Mandamus."*)

But if the relators have sustained a wrong for which they might be entitled to some remedy, the difficulties in the way of their obtaining the relief demanded by them appear to me to be insuperable.   They ask that the assessment may be corrected by the supervisors, or that they direct the amount of the erroneous tax to be levied and collected from the town and county of Westchester.

The assessment roll was delivered to the board of supervisors at their annual meeting, on the first Tuesday in November, 1849, was *finally acted upon* by them at that time, and a warrant was at the same time issued by them to the collector of the town of Westchester, to which a copy of the assessment roll was annexed, commanding him to collect the taxes apportioned according to such roll.   The petition for the writs was verified on the 17th day of December following.   The assessment roll had then passed from the jurisdiction of the supervisors.   They had not then (if they ever had, in the particulars mentioned by the relators,) the power to correct it.   Their powers are prescribed by the statute, and as they constitute a body of limited jurisdiction, they cannot go beyond the statutory bounds.   The rule is well settled that a mandamus will not be granted where it would be unavailable, from a want of power in the defendants to perform the re-

quired duty. (*The People* v. *The Supervisors of Greene County*, 12 *Barb.* 217.)

There is no ground for requiring the defendants to cause the amount of the tax erroneously imposed to be levied and collected from the town and county of Westchester, as it is not alleged, nor does it appear that the taxes had been paid by the relators, when the writs were allowed, but on the contrary the petitions on which the writs were issued ask that the collector of the town may be restrained from collecting those taxes. Another difficulty is that a portion of the taxes would, if paid, have gone into the treasury of the state, and as to that there could be no obligation upon the county or town to refund the amount.

There must be judgment for the defendants in each of these cases. But as there can be no doubt that the relators have been excessively taxed, and as the county of Westchester has to a considerable extent received the avails, I shall not award any costs to the defendants.

[WESTCHESTER SPECIAL TERM, September 24, 1853. *S. B. Strong*, Justice.]