THE PEOPLE, &c., ex rel. CHRISTOPHER DILCHER, *v.* THE GERMAN UNITED EVANGELICAL ST. STEPHEN'S CHURCH OF BUFFALO, ITS TRUSTEES AND MEMBERS.

(SPECIAL TERM, ERIE COUNTY, MARCH, 1871.)

The general allegation of a right to vote for trustees of a religious corporation, without stating the facts essential by statute to show the right, is insufficient, in a writ of alternative mandamus, to restore to that right one claiming to be deprived thereof.

A writ of mandamus does not lie to compel a religious corporation, incorporated under the act of 1813 (2 R. L., chap. 60, p. 212), to restore the relator to membership therein.

DEMURRER to the answer to an alternative mandamus. The writ shows, that the "German United Evangelical St. Stephen's Church of Buffalo" was incorporated in April, 1853, under the act of 1813, providing for the incorporation of religious societies; that it was and is composed of a large number of male persons of full age, and of five trustees; that Dilcher was accepted by, and became a member of such church in 1856, and has ever since continued to be, and now is, a member thereof, and, as such member, has a right, in respect thereof, to a voice in the election of its trustees and its general business transactions, and to the enjoyment of its real and personal property for the purpose of public worship and religious instructions; that, at a meeting held September 6th, 1869, "you" (meaning the said church), "by your corporators there present, adopted a resolution, and caused notice of it to be given to the relator, to wit: 'It was moved and seconded, that the members, Martin Schlenker, and Christopher Dilcher, and L. Hoffman, having carried on a clandestine correspondence to Pittsburg, detrimental to the Rev. Mr. Schiller, be relieved of the office they hold in the congregation, and that other members be elected in their stead.' 'Adopted.' Also, 'it was moved and seconded, that the secretary notify Messrs. Schlenker, Dilcher, and Hoffman, that they are relieved of their offices and expelled from the congregation.'" The correspondence, which it is alleged was referred to, is set forth in the writ. It is stated that no notice of the charges preferred against the relator, or of the trial, was given to him, or to the members of the said church. That the defendants have, since September 6, 1869, prevented, and are now preventing, the relator from the exercise and enjoyment of the rights, privileges, liberties, franchises, and profits appertaining and belonging to a membership of "your church," in contempt of, &c., and the no small damage and grievance of him, the said Christopher Dilcher, and to the manifest injury of his feelings and estate, as we have been informed, &c.

The writ commands the defendants to immediately admit and restore, or cause to be admitted and restored, the relator

" to membership " of " your church, to wit, the German United Evangelical St. Stephen's Church of Buffalo, together with all the rights, liberties, privileges, franchises and profits appertaining or belonging thereto, or signify to us cause to the contrary thereof," &c.

The answer admits the incorporation of the church, and the membership of the relator. It alleges that such church has a constitution consisting of four articles and thirty-seven paragraphs, for the purpose of stating and declaring their peculiar religious faith and preserving and keeping it uniform, containing the qualifications of members and the mode of admitting, governing and disfranchising or expelling them, or otherwise managing the affairs of the said church. A copy of this constitution is annexed, as a part of the return or answer.

It is averred that membership to the church can only be secured by signing the constitution or by-laws; and that no one is entitled to vote or hold office until he has been previously installed by the pastor as a member of the church. Certain other qualifications are specified; and it is averred that no other persons are members of the church, or have a right to vote or hold office, or any right whatever in the franchises or property of the said corporation. It is averred that the relator, when he became a member, signed the constitution and laws of the church. It denies that he continues to be and is a member of the church, or that he has any right to a voice in the election of officers, &c., or to the enjoyment of its real and personal property for the purposes of public worship and religious instruction. It is then alleged that, in September, 1869, the relator and others were dismissed from the church, and removed from their office of trustees, on account of their false, fraudulent, scandalous and malicious conduct, in their correspondence to Pittsburg, to Elias Beegar, secretary of the German Evangelical Protestant Church of that city, of, and concerning, and against the Rev. Frederick Schiller, the pastor of the said German, &c., Church of Buffalo, at a meeting of said church, and by a majority of its members, called

and had on notice to all the members thereof, for the purpose of investigating and adjudicating upon the truth and motive of the said conduct, according to the rules and discipline of the said body, and of which said charge, and the nature, and trial thereof, he, the said relator, had notice, and was present, in pursuance of such notice, in person, for the purpose of defending himself, as he, in fact, did defend himself, on account of, and against, the charge of the said conduct; and it then and there appeared, upon the said trial, before the said body of the members, that, &c., &c. (The facts here averred sufficiently appear in the opinion.) It is averred that, after due consideration, it was adjudged, by a majority of all the members of the said German, &c., Church of Buffalo, that the relator and others named were guilty of the said false, fraudulent, scandalous and malicious conduct in the said correspondence, &c., and that the relator was publicly dismissed and expelled from the said German, &c., Church, removed from his office of trustee, and it was declared that he had forfeited all rights and claims in the same. Some other allegations are made.

The relator demurred to the answer, on several grounds.

*D. F. Clark*, for the relator.

*Green & Bryant*, for the defendants.

MARVIN, J. What is this case? What right does the relator show, of which he has been deprived? He was a member of " The German United Evangelical St. Stephen's Church of Buffalo," a religious corporation, organized under the act of 1813, and he was a trustee. This body, in September, 1869, held a meeting, and the relator, in the writ, says that, by a majority of its corporators, it adopted certain resolutions, which are set forth. The first relieves the relator and others named of the offices they held in the congregation, and the other directed that notice be given to him and the others that they are relieved of their offices and expelled from the congre-

gation. The relator does not ask to be restored to the office he held, but simply " to membership of your church, to wit, the German, &c., Church of Buffalo." If the proceeding was a *church* trial, and he was expelled from the church, the courts have no jurisdiction over the matter. If it was a proceeding by the corporation, conducted by the corporators, and he does not complain of the loss of office, of what has he been deprived? After stating that he was accepted by the defendants, and became a member of the church (by which I understand the *church proper*, as distinguished from the corporation, but, perhaps, I am wrong in this), he states that he has a right, in respect thereof, to a voice in the election of its trustees and its general business transactions, and to the enjoyment of its real and personal property, for the purpose of public worship and religious instruction.

How does he show the right to these things? He deduces the right from the fact of acceptance as a member and becoming a member in 1856. He adds, that he has ever since continued to be, and now is, a member, and, as a member, has the right above stated. (If he is still a member, why apply for a mandamus to restore him to membership?) The allegation of present membership is denied in the answer.

But, assume that the *corporation* relieved him of his office, and that the *church* proper expelled him, though it is not so directly alleged. Perhaps it may be claimed that the trial proceedings, resulting in the resolution that the secretary notify him that he was removed from his office and expelled from the congregation, were the acts of the corporation. The removal from office was undoubtedly a corporate act; but the *expulsion* from the *congregation* was, I have no doubt, the act of the *church*. There is much confusion in the pleadings, arising from a failure to discriminate between the *church proper* and the corporation. The church members and the corporators were probably identical throughout, or nearly so. I think the word *congregation* was used as and for the *church*. The trial was a church trial, participated in by the corporators. But let us give the relator the full benefit of the position which I

The People *v.* The German Church, Buffalo.

suppose he desires to occupy, viz., that his expulsion was the act of the corporation, and that it was an expulsion from the corporation, by which he alleges he was deprived of certain rights as a corporator, one of them to vote for trustees; and how will the case then stand?

After he was expelled from the church, if he was expelled, the only right which it now occurs to me he may have had, as a corporator, was the right to vote for trustees. The relation given in the writ is certainly destitute of the facts necessary to show his right to vote for trustees; nor is it shown that such right has ever been denied him. Indeed it is not shown that any election of trustees has been held. The statute, section 7, declares the qualification of voters after the first election. No person is entitled to vote "until he shall have been a stated attendant on divine worship in the said church or congregation or society at least one year before such election, and shall have contributed to the support of the said church, congregation or society, according to the usages and customs thereof." (Act of 1813, "to provide for the incorporation of religious societies;" 3 R. S., 209, § 7, 2d ed.) There are no allegations in the writ that the relator had been a "stated attendant upon divine worship, &c., or had made contributions, &c.," as the statute requires, to entitle him to vote for trustees. The general allegation of a right to vote, without stating the facts showing the right, is insufficient. (*Com. Bank of Albany* v. *The Canal Coms.*, 10 W., 25; *The People* v. *Ransom*, 2 Com. R., 490.)

Indeed, the simple fact of membership of the church is not sufficient to entitle one to vote. The qualifications of a voter, as specified in the statute, apply to church members as well as others. It seems to me that the relator has not made a case entitling him to the writ. A very clear case should be made to justify the granting of this writ in cases of this kind. There is no controversy touching the right to the possession of the corporate property or its possession. If a person desires to vote for the trustees of a religious corporation and his vote is refused, he should, if he desires the writ,

state facts which clearly show his right to vote. It will be in time, when such a case is presented, to consider whether the people, by their mandamus, should interpose. The question would probably open a wide field for discussion. This writ is not a writ of right; it is granted at the discretion of the court, and such discretion will not be exercised in favor of the applicant unless some just and useful purpose may be answered by it. (Ang. & Ames on Corp., 698–15; 15 Barb., 607.)

I ought perhaps to stop here; but the case was argued upon grounds quite different from that above taken, and as I have examined them (having first followed the counsel and their briefs), I will proceed very briefly to remark upon the case as it has in argument been presented. I think the allegation in the answer of notice to the relator of the charge and trial was quite sufficient. It also stated he was present on the trial and made defence; thus, if there had been no notice, he waived it. (Ang. & Ames on Corp., 421, and cases cited.) The answer contains the constitution of the church, consisting of four articles divided into thirty-seven sections. The provisions in this constitution are very full and particular, touching membership, and the duties of members, and the officers and clergy of the church. They are stated as a part of the answer. They contain many provisions relating to the temporalities, and affecting the corporate interests. The trustees are parties to these rules, and have, as members of the church, subscribed to and adopted them. I am not aware that they are in conflict with anything contained in the act of 1813 concerning religious corporations, or such rules and regulations as the act authorizes the trustees to adopt. By these rules no one can be a trustee unless he is a member of the church; and this rule may be in conflict with the statute, and the trustees may not perhaps have power to enact such a regulation, and thereby bind the corporation.

There has been some apprehension that religious corpora tions are exposed to the danger of revolution; that is, a change of the use of the property from the design and intention of

the original corporators. I think Judge SELDEN, in *Petty* v. *Tooker* (21 N. Y. R., 272), has shown that there is little danger, provided caution is observed in the election of the first trustees, and they and their successors exercise the power given to them by the statute. (Sections 7 and 4.)

I will add to the suggestion of Judge SELDEN, as to the precautions that may be taken, that the trustees and the church may, undoubtedly, refuse to accept contributions from any one from whom it may apprehend hostility or danger.

When the subject is properly understood, I think it will appear that there is little danger of a revolution being effected by surprise if the trustees exercise proper caution in establishing rules and carrying them into effect. The constitution and rules, established by the defendant in this case, are well calculated to preserve the church from revolution and change, and the corporation also.

These rules specify the duties of the clergyman in charge, the duties of all the officers and the members. They enjoin upon the minister great faithfulness to all the members; and upon the officers, kindness and respect to their minister; and they are required to assist him in the performance of many of his duties.

The charge upon which the relator was tried as noticed in the resolution adopted, was the carrying on, in connection with others, a clandestine correspondence to Pittsburg, Pa., detrimental to the Rev. Mr. Schiller. The answer states the correspondence. Their clergyman had visited Pittsburg, and there was a fair prospect of his being called to the Pittsburg church as its clergyman, when the relator and others commenced a correspondence with some of the officers of the church at Pittsburg. This correspondence was unknown to the clergyman and to the church in Buffalo. I think it is properly enough styled clandestine. Its tendency was to interrupt the proceedings which might result in the employment of the Rev. Mr. Schiller by the church at Pittsburg. In short, the conduct of the relator was regarded as disrespectful and scandalous, and as a violation of his obligations and

duties to the clergyman and the church, and he was removed as an officer of the church (of which he does not complain); and it was resolved that notice should be given to him that he was relieved from his office and "expelled from the congregation;" by which I understand from the church, but say it was designed to expel him from the "corporation," to disfranchise him, as it is called, as a corporator. In my opinion he has no cause of complaint, certainly none of any wrong, which can be properly remedied by a *mandamus.* It is difficult for me to conceive how the remedy by mandamus can be made to apply to the case. Restore him "to membership" of your said church to wit, "The Germam United Evangelical St. Stephens Church of Buffalo." If by this is meant the church as distinguished from the corporation formed under the act, the answer, of course, is that the court has no power to do this, or to review the trial resulting in his expulsion. If the corporation is meant, then it is extremely difficult for us to comprehend what legal right he presents that the court can recognize and act upon. The right he states is, "to a voice in the election of its trustees and its general business transactions, and to the enjoyment of its real and personal property for the purpose of public worship and religious instruction." I have already remarked fully touching the right to "vote for trustees," and that this is the only legal right, as a corporator, which the statute defines. The statute confers all the powers of the corporation upon the "trustees." They have the jurisdiction over and control of the corporation property. It is through and by them that the corporation acts, and its property is protected. The relator as a corporator has nothing to do with the "general business transactions" of the corporation; as a member of the church he has large privileges and duties touching the "general business transactions" of the church as a religious body. In short, this case, when understood, is not a case for a mandamus.

The cases referred to by the learned counsel are in no wise analogous. There are in the States some church cases; but

they present tangible questions of right, and are not affected by a statute such as we have in this State, under which *corporations* are created. It is difficult for me to conceive how the doctrine of "franchise" can be applied to a mere membership of our American churches, disconnected with any right or claim to an office which confers rights in, or control over, property. Our churches are voluntary associations, formed under constitutions of their own adoption, and supported by voluntary contributions. They are entirely free, and have no connection with the State. A membership confers such privileges as the church, by its constitution, articles of faith, &c., prescribes. A member may, at any time, withdraw from the organization, or he may be expelled, and the municipal law takes no notice of the doings and acts of the church in these respects. I cannot conceive how the term "franchise" can be applied to any right which a corporator can have in the religious corporation enacted under the act of 1813, unless he should be one of its trustees; and I should hesitate to apply the term *franchise* to this office. That a trustee of one of these corporations has rights which courts of law will protect is undoubtedly true; and a writ of mandamus may, perhaps, under certain circumstances, afford the proper remedy.

The demurrer must be overruled, and there must be judgment for the defendants, I think, dismissing or quashing the writ.