upon the decision of a demurrer to enter an order, instead of a decision, properly speaking; that is, a decision containing formal conclusions of law, and such practice is recognized, although not approved of, by good authority (see Abbott's New Practice and Forms, vol. 2, p. 772). But, whether under the name of an order or decision, there must be some adjudication of the court preceding the interlocutory decree, and out of which every part of the interlocutory decree can be drawn; that is, every provision of the interlocutory decree must be authorized by the prior adjudication. In this case the Special Term erroneously overruled the demurrer. The Appellate Division reversed that decision and sustained the demurrer, and gave leave to the plaintiff to amend on terms. If that disposition of the matter had been made in the first instance by the Special Term, it would not have been obligatory under the provisions of the first portion of section 1021 at that time to have directed the form of final judgment, because a nonsuit was not granted. Such a disposition required an interlocutory judgment to be entered, and in effect directed it. That brings the case within the latter portion of section 1021, which provides that in such an event the decision may (not must, as in the earlier portion of the section) also direct the final judgment to be entered if the party in fault fails to comply with any of the directions given or terms imposed. No such direction for final judgment having ever been given, the practice of the defendants' attorney is proper in now moving for such direction. Code Civ. Proc. § 1230; Liegeois v. McCrackan, 22 Hun, 69.

Motion granted, with $10 costs.

─────────

(50 Misc. Rep. 63.)

### PEOPLE ex rel. CITY OF GENEVA v. BOARD OF SUP'RS OF ONTARIO COUNTY.*

(Supreme Court, Special Term, New York County. March, 1906.)

1. TAXATION—REVIEW—PARTIES INTERESTED.

 Under Laws 1896, p. 806, c. 908, § 24, as amended by Laws 1901, p. 1350, c. 550, a tax on bank stocks is raised for local purposes and divided among the local districts for village, city, town, or school purposes only, and is in lieu of all other taxes whatsoever for state or local purposes on such stock. The board of supervisors of Ontario county, in estimating the share of the city of Geneva for city and county taxes, included in the personal property of the city the shares of the banks in the city, thereby increasing the city tax by about $1,000. Laws 1897, pp. 458, 460–462, c. 360, §§ 110, 114, 115, 119, relate to the equalization of assessments between the city of Geneva and the several towns in the county and the apportionment of the tax, and provide that any deficiency in the county of the tax remaining uncollected shall be paid out of the general city funds to the county treasurer, and that all unpaid state and county taxes shall thereafter belong to the city, which may compel payment to reimburse itself. *Held* to give the city a direct interest in the amount and validity of the state and county tax levied on its taxpayers, so that it was injuriously affected by the illegal action of the county board and entitled to sue to correct the same.

2. SAME—RIGHT TO CORRECTION.

 Where the supervisors of a county improperly assess the shares of bank stock in a certain city other than in the manner provided by Laws 1896, p. 806, c. 908, § 24, as amended by Laws 1901, p. 1350, c. 550, whereby the tax of said city is increased, the city is not deprived of its right to

─────────
*Affirmed on appeal 100 N Y Supp 1136

have its share reduced to the proper amount, though the tax rolls have been distributed among the various town collectors, and it is impossible to distribute the deficiency created by such illegal tax among the towns which should have been charged with it originally.

3. SAME—MANDAMUS TO COMPEL CORRECTION.

Where the supervisors of a county improperly taxed the bank stock of a city together with the other personal property in said city, in violation of Laws 1896, p. 806, c. 908, § 24, as amended by Laws 1901, p. 1350, c. 550, providing for separate assessment for the benefit of the city, a writ of mandamus will issue, directing the board of the succeeding year to convene and to issue forthwith, as directed by the charter of such city (Laws 1897, p. 458, c. 360, § 110), a certificate that the share of the state and county taxes to be raised in that city for the year 1906 is subject to the deduction of the amount illegally added to the tax by the improper assessment of the bank stock.

[Ed. Note.—For cases in point, see vol. 45, Cent. Dig. Taxation, §§ 911, 912.]

Action by the people, on the relation of the city of Geneva, against the board of supervisors of Ontario county for a peremptory writ of mandamus. Writ granted.

W. Smith O'Brien, for relator.
Anson L. Gardner, for respondent.

SUTHERLAND, J. This proceeding is brought by the relator to compel the board of supervisors of Ontario county to convene and reapportion, among the various towns of the county and the city of Geneva, the amount required to be raised therein for state and county taxes for the year 1906, in order to correct an error of the board of 1905 in its apportionment made December 14, 1905. It seems that the total amount of taxes to be raised by the county of Ontario in the year 1906 for state and county purposes was estimated by the board at $108,600.39, and that the aggregate real estate of the county, as assessed and equalized, amounted to $28,883,664, and that the aggregate taxable personal property of the county, for the purpose of arriving at a tax rate, was estimated at $3,522,332. In this estimate of the amount of personal property the board included $525,919.74, the value of the shares of stock of banks in the city of Geneva, taxable under section 24 of the tax law (Laws 1896, p. 806, c. 908, as amended by Laws 1901, p. 1350, c. 550), and the shares of stock of banks engaged in business in the town of Canandaigua, in said county, taxable under said section 24, were also included, at a valuation of $262,391.26, making a total of bank stock valuation of $788,311 included in the aggregate personalty of the county. In estimating Geneva's share of that total valuation, the board equalized the real estate of said city at $5,795,046, and its aggregate personal property at $1,447,169, in which latter amount is included the value of the shares of the Geneva banks. The share of the total tax upon Ontario county for state and county purposes which this method of equalization would place upon the city of Geneva amounts to $24,270.42, and that was the amount which the board determined that city should pay for those purposes. The relator is represented in the county board by one supervisor, who voted against the resolution fixing the equalization of Geneva at those figures. On December 13th, one day before the equalized value was fixed as before

stated, the supervisor of Geneva offered a resolution that, in fixing the equalized value of the personal property in the county and in the city of Geneva, the bank stock valuation should be deducted. This resolution was defeated and the other plan adopted, and the tax rolls were signed by the board on December 14th, on which day the board adjourned its annual meeting sine die.

It seems clear that the method adopted by the board in this case was improper. The amount of state and county taxes to be raised in the county of Ontario being fixed and ascertained at $108,600.39, the share thereof to be raised within the city of Geneva is determined by the ratio which the amount of property in the city of Geneva, assessed and taxable for that purpose, bears to the entire property within the county, assessed and taxable for that purpose. Under section 24 of the tax law, the 1 per cent. tax levied upon the value of the bank stock is not applicable toward the payment of the $108,600.39. That amount must be raised from the real and personal property of the county taxable for general purposes, exclusive of the bank stocks specially taxed under section 24. The tax upon bank stocks under this section is raised for local purposes and divided among the local tax districts for village or city, town, or school purposes only. No part of it goes to the county or state; and section 24 provides that "the said tax shall be in lieu of all other taxes whatsoever for state, county or local purposes upon the said shares of stock." The equalization which the board should have made would have fixed the aggregate real estate of the county taxable for state and county purposes at $28,883,664, and the aggregate personal property of the county taxable for said purposes at $2,734,021, and would have fixed the real estate of Geneva, assessable for such purposes, at $5,795,046, and the personal property in Geneva, taxable for such purposes, at $921,250. Upon such a basis, the proportion of the entire sum to be raised for state and county purposes in the city of Geneva would be $23,059.11. By the method actually adopted, the amount apportioned to Geneva was $24,270.42, making an illegal excess cast upon the real and personal property of the taxpayers of Geneva, exclusive of the bank stocks referred to, of $1,211.31.

This proceeding was instituted by the service of an order to show cause December 21, 1905, granted December 20th by Mr. Justice Dunwell, requiring the board of supervisors to show cause, at a Special Term of this court appointed to be held December 23d, why an order should not be made directing that a peremptory writ of mandamus issue, requiring the board forthwith to reconvene and to reapportion the taxes among the several towns within the county and city of Geneva in accordance with the terms of the resolution introduced December 13th by the supervisor of Geneva, omitting from the aggregate personal property, for the purposes of said equalization, the bank stock aforesaid. Before the order to show cause was served upon the chairman of the board, several of the tax rolls with the warrants annexed had been delivered to the proper collectors, and other rolls were delivered to other town collectors on the return day of the order. The motion was not heard on that day, but a stipulation was signed by the clerk of the board, reciting that he had been authorized by the chairman of the board to sign the same, and also reciting that the board desired to avoid the

expense of calling a special meeting before the return day, and that, as a meeting of the board had already been called for January 9, 1906, it was stipulated that the hearing should be adjourned until January 13, 1906; and the stipulation then continues as follows:

"At which time the defendant may appear and interpose and avail itself of any defense to said proceeding which it might urge on the return of said order, it being understood that this proceeding shall continue and apply to the new board of supervisors with the same force and effect as it does to the present board."

And also:

"That on the hearing herein the defendant will not urge or claim any advantage on account of such adjournment, or claim or urge any defense herein of which it might not avail itself with like force and effect on the return day named in said order."

The motion was not made on January 13th, but was first heard by this court on January 22d, at which time counsel for the board not only contended that the method of equalization was right upon the merits, but that this proceeding could not be maintained because the board had exhausted its powers in the premises and could not be reconvened for the purpose of correcting an error in the equalization and apportionment, if any error had been made; and it is also urged, on behalf of the board, that the city of Geneva, in its capacity as a municipal corporation or political subdivision of the county, has no legal capacity to vindicate the rights of the taxpayers of Geneva in this proceeding, even if they are assessed, relatively, for too high a figure.

But the relation of the city of Geneva to the state and county tax upon the assessable property therein is peculiar, as those taxes are not spread in the usual way by the board of supervisors upon the tax roll for the city of Geneva, and no warrant for the collection thereof is issued by the board, as in the case of the towns; but, under the charter of the city (Laws 1897, p. 460, c. 360, § 114), it is provided as follows:

"The board of supervisors of Ontario county shall in each year equalize the assessments within the city of Geneva with the assessments of other towns in said county, but shall not cause the state and county tax apportioned to said city to be spread upon any tax roll of property within the city, but the aggregate of state and county tax apportioned by said board of supervisors to said city shall be certified as hereinbefore provided to the common council of said city in each year prior to the first day of January, to be levied, assessed and collected, and paid over to the county treasurer as hereinbefore provided. In equalizing the assessments between the city of Geneva and the several towns in the county, and in apportioning the tax, the board of supervisors shall regard the city as a town."

The board of supervisors is directed by section 110 (page 458) to send a similar certificate to the city clerk on or before the 15th day of December of each year, and he is required thereupon to extend and apportion the state and county tax upon the assessment roll of Geneva, together with the city taxes; and the tax roll, when approved by the common council of Geneva, is delivered to the city treasurer, with a warrant for the collection of the entire tax, city, county, and state. Section 115 (page 461) of the charter says the tax roll shall be delivered to the treasurer on or before the 15th day of January, "or as soon

thereafter as practicable." The treasurer is required to return the warrant to the city clerk within 90 days after the date thereof. The city treasurer is thus made the collecting agent; and not only do the state and county make use of the city officials for the purpose of spreading and collecting the state and county tax, but the city treasurer is required, by section 119 (page 462) of its charter, to pay to the county treasurer out of the general city funds, on or before the 25th day of April of each year, any deficiency in the amount of such tax remaining uncollected, and thereafter all unpaid state and county taxes belong to the city, which may compel payment to reimburse itself.

It would seem, therefore, that the city has a direct interest in its capacity as a municipal corporation in the amount, validity and enforceability of the state and county tax levied upon the taxpayers of Geneva; and the relator, being injuriously affected by the illegal action of the board, is entitled to have this error corrected and the share of the state and county tax to be collected by its officers or paid out of its treasury reduced to the proper amount, if that can be done at the present time. The board of 1905 has gone out of existence. It duly issued the warrants to the collectors of the various towns of the county, and the tax rolls thus made up are in the process of collection, and there would seem to be no way in this proceeding for those tax rolls to be recalled and corrected. People ex rel. Lorillard v. Supervisors of Westchester county, 15 Barb. 607; Colonial Life Assurance Co. v. Board of Supervisors of New York County, 24 Barb. 166; High Leg. Rem. § 140.

But, as has been seen, in the case of the city of Geneva, no tax roll was made up by the board. It only issued a certificate to the city officials, stating what share of the state and county taxes must be raised by them in the manner provided by the city charter. The amount thus certified was excessive, and the amount of the illegal excess is clearly ascertained; and, although the city charter requires the board to issue this certificate to the city clerk by the 15th day of December, and to the common council prior to the 1st day of January, those dates are fixed so that ample time may be given the city officials to make up the tax rolls, which are to be delivered to the treasurer for collection "on or before the fifteenth day of January, or as soon thereafter as practicable"; and, as we are advised that the tax rolls have not yet been delivered to the city treasurer for collection, there is yet time for a corrected certificate to be issued, stating the proper amount to be raised, provided the board of supervisors now in office has any legal power to issue such corrected certificate.

It seems to me that it should be held that the present board has that power. It is the only body that can correct the error, and the duty to issue a proper certificate is a continuing duty not yet discharged, and the omission of the former board to do its duty does not render a substantial compliance with the statute impossible. I think precedent for convening the new board and directing it to issue to the city clerk and common council of Geneva a proper certificate is found in the case of People ex rel. Scott v. Supervisors of Chenango County, 8 N. Y. 317. The relator should not be deprived of its right to have the share of Geneva reduced to the proper amount, although it is impossible at the present time to recall the tax rolls from the various town collectors

and distribute the deficiency thus created among the towns which should have been charged with it originally.

Accordingly a peremptory writ of mandamus may issue, directing the present board of supervisors immediately to convene and to issue forthwith to the city clerk and comomn council of Geneva a certificate which shall state that the share of the state and county taxes to be raised in Geneva for the year 1906 is $23,059.11. Fifty dollars costs, besides disbursements, are awarded to the relator.