THE STATE *ex rel.* ATTORNEY GENERAL v. THE KANSAS CITY, ST. JOSEPH & COUNCIL BLUFFS RAILROAD COMPANY.

1. **Railroads**: DUTY OF RESPONDENT TO RUN TRAINS TO SAVANNAH. Under the charter of the Missouri Valley Railroad Company and its successor, the Kansas City, St. Joseph & Council Bluffs Railroad Company, and the acts amendatory thereof, the latter company is bound to maintain railroad connection between the cities of St. Joseph and Savannah and to run a train of cars daily between those points; but it is not bound to make Savannah a point on its main track or to run all its trains to the old depot at that place. In maintaining a switch from this depot to the depot on the new line located and established under and by authority of the amendatory act of 1871, and running a train of cars daily over this switch to the old depot, the company sufficiently complies with the law.

2. **Mandamus.** Cases may arise where the applicant for relief has

| 77 | 143 |
| 96 | 71 |

| 77 | 143 |
| 37a | 101 |

| 77 | 143 |
| 54a | 450 |

| 77 | 143 |
| 72a | 681 |

| 77 | 143 |
| 74a | 217 |

| 77 | 143 |
| 80a | 219 |

an undoubted legal right for which mandamus is the proper remedy, but where the court may, in the exercise of a wise judicial discretion, still refuse the relief.

3. ———. The peremptory writ of mandamus must conform strictly to the alternative writ. Overruling *School District No. 1 v. Board of Education of Lamar*, 73 Mo. 627, and *O. V. & S. K. R. R. Co. v. Morgan Co. Ct.*, 53 Mo. 157.

## *Mandamus.*

WRIT DENIED.

*David Rea & Son* and *Pembroke Mercer* for relator.

*B. F. Stringfellow* and *Strong & Mosman* for respondent.

HENRY, J.—This is a proceeding by mandamus to compel the respondent to run all its passenger and freight trains, and at least one train of cars daily, back and forth, to its depot in the town of Savannah, and to maintain and keep the depot there, so as to accommodate the passengers and shippers who may desire to ship produce and merchandise or to take passage from said depot. The whole controversy turns upon the construction of several acts of the legislature in relation to this respondent and the railroad company to whose rights it succeeded.

By an act approved March 8th, 1867, the Missouri Valley Railroad Company had authority to locate, construct, use, operate and enjoy a railroad from a point at or near the western terminus of the Pacific Railroad through    *    * the towns of Weston and St. Joseph    *    * to the southern line of the state of Iowa, and on and over the roads located by the Atchison and St. Joseph, the Weston and Atchison and the Platte County Railroad Companies, or either of them, with the privilege of changing the line of the Platte County Railroad so as to run from a point in the city of St. Joseph, along the valley of the Missouri

1. RAILROADS: duty of respondent to run trains to Savannah.

river by way of Forest City to the Iowa line     *    * and of locating, constructing, using, operating and enjoying a branch road from the town of Savannah to the Iowa line, in the direction of Des Moines City. The act also contains the following: " Provided that nothing in this act shall be taken or construed to authorize said company, its successors or assigns, to change the general route, tear up, destroy or render unfit for ordinary railroad purposes that part of their railroad or any portion thereof, which extends from their connection in the city of St. Joseph with the road running south to Weston to their present terminus in the town of Savannah, but said road from St. Joseph to Savannah shall be kept in good running order, and at least one locomotive and train of cars shall be run daily back and forth over the same, accidents excepted, and Sundays at the discretion of the company; and in default thereof, all rights and privileges and franchises granted by this act are to be held as null, void and of no effect." The Missouri Valley Railroad Company took possession of said road and ran and operated the same from St. Joseph to said Savannah depot until the 11th of June, 1870, and during that time constructed, as a part of its road, a road from said depot in a northern direction to the north line of the State of Missouri. In July, 1870, that company consolidated with the St. Joseph & Council Bluffs Railroad Company and formed one company styled the Kansas City, St. Joseph & Council Bluffs Railroad Company. It is not denied that the latter company, the respondent herein, succeeded to the rights and assumed the obligations conferred and imposed by the act of 1867.

By an act of the general assembly approved February 8th, 1871, the respondent was authorized " to change the general route of that part of its railroad which extends from its connection in the city of St. Joseph, with that other part of said road which runs south to Weston, to its present depot in the city of Savannah, so as to lessen the grades of said part of said road, and to cheapen the cost

of operating the same; provided, that said company shall continue to keep and maintain its depot at Savannah at the present site of said Savannah depot." Under and in pursuance of that act the road from St. Joseph to Savannah was torn up, and a road constructed upon another route, which ran a half mile from the town of Savannah and formed part of the main line of respondent's road by connecting with that part of the road running north from Savannah. That portion of the latter road which lay between this connection and the old depot at Savannah has been used as a switch, on which trains of cars approach the old Savannah depot from the north.

Respondent contends that the act of 1871 repealed the proviso contained in the act of 1867. That it repealed so much of the proviso as related to changing the general route of that part of the road and tearing up the track, we entertain no doubt; but it by no means follows that the requirement to run a daily train of cars to the old Savannah depot was repealed. The act of 1871 expressly requires the company to "continue to keep and maintain its depot at Savannah at the present site of said Savannah depot." On any other hypothesis than that of the duty of the company to run a train of cars to that depot, as required by the act of 1867, the requirement to keep and maintain a depot at the site of the one already there is sheer nonsense. We assume that in changing the general route of the road between St. Joseph and Savannah the company has consulted the public interest and selected the best route attainable. Nothing now in the pleadings raises an issue on that point. We are also of the opinion that in merely maintaining a switch from its new depot north of Savannah to the old Savannah depot the company has not violated the letter or spirit of the act which authorized the change of the route of the road between St. Joseph and Savannah, and that, as the law now stands, the respondent is under a legal obligation to keep and maintain a railroad connection between St. Joseph and Savannah, and to run a train of

cars daily between those points, as required by the act of 1867. But this is not all the relator asks. He also asks that the respondent be required to run all its trains to the old depot at Savannah, whether through or local, freight or passenger trains, going north or south, construing the acts in question in effect as requiring the company to make Savannah a point on the main line of its road and to run all its trains to the old depot. We do not think they bear this construction. The inconvenience and danger to the traveling public and shippers of produce and merchandise over the road is a strong argument against it. In the relator's view every train, both passenger and freight, whether it has a passenger or pound of freight for Savannah, would have to be switched off of the main track and run down to the Savannah depot with no practical object in view, and at an unnecessary increase of the danger incident to switching trains, and occasioning delay ruinous to shippers and detrimental to all other interests than those of the town of Savannah, without benefiting the town in any conceivable, substantial manner whatever.

If such were the conceded law, whether a court would by mandamus compel a party to discharge such an obliga-

2. MANDAMUS.     tion is by no means clear. "Cases may arise where the applicant for relief has an undoubted legal right for which mandamus is the proper remedy, but where the court may, in the exercise of a wise judicial discretion, still refuse the relief." High on Extraordinary Remedies, § 9.

Holding that relator is entitled to a portion of what he asks for, but not the balance, can we grant the prayer

3. ——.     and award a peremptory writ for that to which he is entitled? High, in his work above cited, says: " It is a well settled principle that the peremptory writ must conform strictly to the alternative mandamus, being necessarily limited as to form by the terms of the alternative writ. In other words, the courts are powerless to award the peremptory writ of mandamus in any other

form than that fixed by the alternative writ. It follows, therefore, that if the alternative writ commands the doing of several things, it is incumbent upon the relator, in order to entitle himself to the peremptory writ, to show that he is entitled to the performance of all the things specified, and if he fails in any substantial part in establishing his title to any of the things sought, there can be no peremptory mandamus." § 548; Tapping on Mand., 327; Moses on Mand., 207; *State ex rel. v. The Town of Pacific*, 61 Mo. 158; *State ex rel. v. Holladay*, 65 Mo. 75. In the case of *School District No. 1 v. The Board of Education of Lamar*, 73 Mo. 627, the contrary was held. In that case, by an oversight, this court followed the case of the *O. V. & S. K. R. R. Co. v. The County Ct. of Morgan Co.*, 53 Mo. 157, which was in effect overruled by the *State ex rel. v. Trustees of the Town of Pacific*, 61 Mo. 158, followed in the subsequent case of *State ex rel. v. Holladay, supra*.

For the foregoing reasons the peremptory writ is refused. All concur.