STATE *ex rel.* HENRY S. MILLETT, Relator, v. RICHARD M. FIELD, Judge, Respondent.

### Kansas City Court of Appeals, May 20, 1889.

1.  **Appellate Jurisdiction.** In proceedings in *mandamus*, this court has original jurisdiction, concurrent with supreme court, bounded only by its territorial limits, and unlimited as to the values or the questions that it may involve, and its judgments therein are of like force and effect.

2.  **Bill of Exceptions:** MAKING PART OF RECORD: DUTY OF JUDGE. Under the provisions of our statute law there is no way to complete and perfect the record by adding thereto the matters contained in the bill of exceptions, unless the judge of the trial court shall act in the matter. If the bill when presented is true the judge should sign it; if untrue, he should refuse to sign for that reason and certify thereon the cause of such refusal. If, after such refusal, three bystanders sign said bill and it be again presented, the judge, if he believe it to be true, should permit the same to be filed, and if he refuse to permit such bill to be filed, he should certify that it is untrue, and the issue whether the bill is true or untrue will be tried by the appellate court on affidavits as provided by the statute.

3.  **Mandamus:** REMEDY AS TO ACTION ON BILL OF EXCEPTIONS: Where a bill of exceptions is presented to the trial judge for his signature it is his duty to act,—allow or disallow—and he cannot be permitted to sacrifice the right of litigants by his inaction; and *mandamus* is the proper remedy to compel him to act.

4.  **Appeal:** RIGHT OF, FROM ORDER REMOVING ASSIGNEE. An order removing an assignee, and ordering him to turn over the assets of the estate in his hands to his successor, is such a final judgment, and the assignee so proceeded against is such a "party in interest to the proceedings," that he is entitled to have his exceptions saved and preserved and prosecute his appeal therefrom.

State ex rel. Millett v. Field.

5. **Definitions**: PARTY IN INTEREST. The meaning of "party in interest to the proceedings" as used in the assignment act is discussed in the opinion.

6. **Appeal**: RIGHT OF NOT FORFEITED BY CONTEMPT. It is clear from the facts in this case that at the time of presenting his bill of exceptions and asking his appeal, relator was in contempt of court in refusing to obey the order of removal and continuing to act as assignee, yet such contempt could not bar his right of appeal, which was a matter of strict right, not a matter of favor or grace of the court, and being so the court could not legally refuse its exercise.

7. **Judgment**: NOT SUSPENDED BY MOTION FOR A NEW TRIAL. The order of the court removing the assignee could not be suspended by the filing and pendency of a motion for a new trial and could only be suspended by a bond and an affidavit in appeal entitling the assignee to a *supersedeas*.

8. **Mandamus**: PEREMPTORY WRIT MUST FOLLOW ALTERNATIVE. The peremptory writ of *mandamus* must conform strictly with the terms of the alternative writ; and if more is demanded in the alternative writ than can be granted in the peremptory writ, then the peremptory writ must be denied altogether.

9. ———: CAN ONLY MOVE TO ACTION, CANNOT CONTROL DISCRETION. It is not the province of *mandamus* in dealing with subordinate tribunals to command any particular judgment, or to require the exercise of a discretion, reposed by law in such court, in a particular case. The superior court may command the lower court to move ; and the penalty of an appeal bond, and the sufficiency of the securities thereon, are matters left to the judgment of the court where the same is to be filed, and it is not in the power of this court to exercise such judgment and discretion for, or on behalf of, such court.

## Original Proceeding.

WRIT DENIED.

*Frank Titus*, for the relator.

(1) The order, judgment and decision of respondent of March 9, 1889, removing petitioner as assignee of J. H. Ramsey and ordering him to deliver the money and property of said estate to Wm. Allbritain, is such a final order or judgment as may be appealed from by petitioner. R. S., sec. 393, p. 60 ; R. S., sec. 3710, p.

632 ; *State v. Allen*, 92 Mo. 20 ; *State ex rel. v. McAuliffe*, 48 Mo. 112 ; *Gale v. Michie*, 47 Mo. 326 ; *Slagel v. Murdock*, 65 Mo. 522 ; *Wise v. Darby, Adm'r*, 9 Mo. 131 ; *In re Loan & Trust Co.* ( Sup. Ct. U. S. 1889 ), 9 Sup. Ct. Rep. 265 ; 2 Wall. 521 ; 3 Pom. Eq. 358 ; *Bank v. Wire Works*, 25 N. W. Rep. ( Mich.) 202 ; 58 Mich. 124, 315 ; *Barry v. Briggs*, 22 Mich. 201, 206 ; *Dollard v. Taylor*, 33 N. Y. 496 ; *Ware v. Richardson*, 3 Md. 505; *Baker v. Leman,* Wright's Rep. (Ohio) 522 ; *James v. Ray*, 59 Mo. 280. (2) Relator is entitled to a peremptory writ commanding the granting of his appeal and the performance by respondent, of the ministerial functions of signing and permitting the filing of a bill of exceptions, and the accepting the affidavit for appeal and bond if the same be necessary. Const. Mo., art. 6, sec. 3 ; *State ex rel. v. Kansas City Court of Appeals*, 10 S. W. Rep. (Mo.), 855 ; *County Court v. Sparks*, 10 Mo. 118 ; *State ex rel. v. County Court*, 41 Mo. 221 ; 112 U. S. 50; High Ext. Leg. Rem., sec. 534; *Byrne v. Harbison*, 1 Mo. 225 ; *Hall v. County Court*, 27 Mo. 329; 94 U. S. 248; *Dane v. Derby*, 89 Am. Dec. 728–742, note ; *People v. Pearson*, 33 Am. Dec. 445 ; *Ex parte Bradley*, 7 Wall 364, 375 ; Bacon's Abridgment, Mandamus, Letter D ; Tapping on Mandamus, 105; 3 Blackstone Com. 110. The amount of penalty filed by appellant in appeal bond is immaterial. Court below must file it, and allow appeal. *State ex rel. v. Adams, Judge*, 9 Mo. App. 464. (3) The effect of the issuance of the alternative writ is to suspend all proceedings by the circuit court to carry into effect its order on the assignee ( relator ) to pay over the money of his estate, and further to suspend all action on the order of commitment. *People v. Pendergrast*, 117 Ill. 588; s. c., 6 N. E. Rep. 695 ( West ) ; *State ex rel. v. Seddon*, 93 Mo. 520. (4) The relator as assignee of Ramsey is not an officer of the court in the legal and proper sense of that expression, but in this state he has

always been held to be a purchaser for a valuable consideration in the highest sense of the term.. *Gates v. Labeaum*, 19 Mo. 17, 26; *Bank v. Hughes*, 10 App. R. 17; 17 App. Rep. 61, 65. And such assignee cannot be arbitrarily or in the so-called discretion of a judge summarily deprived of his trust. In proceedings in this state to remove executors the appointment of an administrator *pendente lite* is by force of a statute. R. S., sec. 14, p. 4; *Lamb v. Heim*, 56 Mo. 420; *Rogers v. Dively*, 51 Mo. 193. Executors, as the supreme court at pages 430, 431, 56 Mo., declare, derive their powers not only from the will, but from the statutes, but this is not true in conveyances by deed in trust for creditors. And even in cases relating to executors a temporary administrator *pendente lite* occupies the position of a receiver. 67 Mo. 418; 56 Mo. 433. All of which is quite distinct from the procedure in the court below in the present case as set forth in relator's petition resulting in the judgment from which he prayed an appeal. (5) It is error in a trial court to issue execution as on a final judgment, exceptions or a motion for new trial being duly filed and undisposed of. *Stephen v. Brown*, 56 Mo. 23; 7 Dana (Ky.) 253; 4 Cal. 106; 13 B. Monroe, 234.

*H. Wollman* and *Wash. Adams*, for the respondent.

(1) The assignment matter, from the administration of which Millett was removed, involves over twenty-three thousand ($23,000) dollars. Millett has now in his hands, belonging to said estate, over twenty-three thousand ($23,000) dollars. This court by reason of the amount involved could have no jurisdiction by appeal, or other review proceedings over said estate, nor any matters connected therewith, and, where this court has no jurisdiction to review a case, it has no superintending jurisdiction over the lower court in such a case, in aid of an appeal, for that would give two courts jurisdiction to rule upon the same question, to-wit: The question

State ex rel. Millett v. Field.

as to whether a case was appealable, and we might have the predicament of the court of appeals deciding the question in the *mandamus* case one way and the supreme court, when the case got there, ruling the other. The amendment to the constitution was intended to avoid this. Amendment to Const. Laws, 1883, p. 216, sec. 5; *Prest v. Deaver*, 21 Mo. App. 209; *State ex rel. v. Seay*, 23 Mo. App. 629. If relator be entitled to an appeal, the right, not being qualified, carries with it the right to give bond and suspend the operation of the order to turn over the estate to his successor as well as the part of the order removing him. *The State ex rel. v. Lewis*, 70 Mo. 370. Hence the assets of the estate are involved in this appeal. There is no parallel to this proposition in the idea that this court has jurisdiction in appeal from unlawful detainer proceedings, though the value of the land exceeds the sum of twenty-five hundred ($2,500) dollars; for in unlawful detainer the title to the land is not in issue but the possession only. There is an obvious difference in the consequences of possession of real and personal estate, the latter may be lost, embezzled or carried away by the possessor; the former is not subject to any such contingency. The order to turn over is precisely the same as the judgment in a replevin suit. (2) *Mandamus* never lies where the party has any other adequate remedy whereby the relief sought may be accomplished. High Ex. Leg. Rem. [2 Ed.] secs. 15 and 16; *Dunklin v. County Court*, 23 Mo. 449; *Ex parte Chambers*, 10 Mo. App. 240; *State ex rel. v. Lubke*, 15 Mo. App. 152; *State ex rel. v. Horner*, 16 Mo. App. 191; *State ex rel. v. Marshall*, 82 Mo. 484. Revised Statutes of 1879, sections 3636–3643, as amended by Laws of 1885, page 214, provide a perfect, complete and adequate procedure for preserving exceptions where the court refuses to sign or allow filed a bill of exceptions, hence *mandamus* will not lie to compel a judge to sign or allow same to be filed in such a case. *State v. Thayer*, 15 Mo. App. 391; *State ex rel. v.*

*Wickham*, 65 Mo. 634. Section 3714, Revised Statutes, 1879, provides fully that the appellate court or judges thereof may allow an appeal. (3) Millett being in contempt of court as shown by the return and affidavits, and his own reply filed herein, the court had a right to refuse to consider any alleged bill of exceptions presented by him until he purged himself of his contempt, and his counsel having admitted at the time he presented the papers, the allowance of which he is appealing to this court to compel, that he advised him to disobey the then existing orders of court, the court had the right, upon this ground alone, to refuse to recognize any application made by his said counsel also in the same proceeding. 1 Daniel Ch. Pr. [4 Ed] 504; *In re Wooley*, 11 Bush. [Kentucky] 95. This conclusion is necessary to enable any court to exact the respect due its authority, March 16, to turn over the estate. Rapalje on Contempt, secs. 23–24, 28; Thomp. Trials, sec. 135. (4) It is claimed that the filing of the motion for a new trial suspended the order of removal and to turn over the estate. This is not true. It did not suspend, postpone or impair its force in any way. *Ortman v. Dixon*, 9 Cal. 23; *State v. Horner*, 16 Mo. App. 199; *Vose v. Trustees*, opinion by Justice BRADLEY of the United States supreme court, 2 Woods. U. S. Circuit Court, 653 and 654; 53 N. Y. 404 and 405. (5) A court of chancery has a superintending control over all trustees. Bisp. Eq., p. 35, sec. 20; p. 190, sec. 147; *In re Pet. of Cohn*, for removal of Wentworth, assignee, 78 N. Y. 248, 252; Perry on Trusts, secs. 275, 279; secs. 817, 818; Hill on Trusts, pp. 298, 304; High on Receivers, secs. 821, 824. An assignee in a voluntary assignment for the benefit of creditors is a trustee. *Shockley v. Fischer*, 75 Mo. 502; Perry on Trusts, sec. 593; Pomeroy's Equity, secs. 994, 3636; Bisp. Eq., p. 107, sec. 66. Incident to such superintending control is the power of removal. *Pinneo v. Hart*, 30 Mo. 561; *Kehoe v. Taylor*, 31 Mo. App. 588. 593; 78 N. Y. 248, 252; *Hatcher v. Winters*, 71 Mo. 30,

And such power may be exercised by motion made in a proceeding pending for administration of the estate as well by an independent proceeding. *Boggs v. Brooks*, 45 Mo. 233; Perry on Trusts, p. 261, sec. 282. (6) Relator has no appeal from order of removal. There is a paucity of authority upon this point, and we can only argue this upon principle and analogy rather than upon precedents which come down "on all fours." Millett, as an individual, is appealing, he desires to retain the office. No ruling affecting him in his representative capacity as an assignee is being appealed from by him in his representative capacity. From proceedings in chancery there is no common-law right of appeal in any case, hence, whatever right of appeal now exists is only that conferred by statute. *Schooner v. Woodworth*, 1 Scammon, Ill. 511; 13 Ill. 233; *Boggs v. Brooks*, 45 Mo. 233. Relator assumes his right of appeal under section 393 of the statutes of 1879. This assumption is obviously erroneous for the following reasons: *First.* The scope of the right of appeal, if it includes assignees at all, extends, according to the words of said section only, to proceedings as had under that chapter of the statutes. It expressly appears from the alternative writ that the proceedings removing Millet as assignee were not in virtue of this statute. The specific mention of one class in this section, as entitled to an appeal, excludes every other by necessary implication even if this section meant to extend the right of appeal to an assignee. The statute confers the right of appeal upon parties in interest only, viz.; creditors or the assignor in a case of removal. There is no contract-right to hold an office, it may be abolished at the pleasure of the lawfully constituted authorities. *State ex rel. v. Davis*, 44 Mo. 128–131; Cooley's Const. Lim. [4 Ed.] top p. 334; *Pinneo v. Hart*, 30 Mo. 561; *Kehoe v. Taylor*, 31 Mo. App. 588–593; *Hanchett v. Waterbury*, 115 Ill. 220; Beach on Receivers, sec. 286; High on Receivers, sec. 225; *Railroad v. Railroad*, 55 Md. 153, 155; *Hull v. Caughy*, 66 Md. 104;

*State ex rel. v. Lewis*, 76 Mo. 370. A right of appeal is therefore utterly inconsistent with what is required of a dismissed assignee in section 385 of the statutes; for it is provided in this section that when an assignee is removed the court shall order him to forthwith turn over the estate to his successor or other person designated by the court. *Oberkoetter v. Luebbering*, 4 Mo. App. 481; *The State v. Musick*, 7 Mo. App. 527; *Ladd v. Couzins*, 35 Mo. 513; *DeKalb County v. Hixon*, 44 Mo. 341; *Burgess v. O'Donohue*, 90 Mo. 299; *State v. Rowse*, 49 Mo. 593; *Henrichs v. Woods*, 7 Mo. App. 236; *Tufte v. Thompson*, 22 Mo. App. 564; *Zumwalt v. Zumwalt*, 3 Mo. 269; *Mellon's Appeal*, 32 Pa. St. 121; *Combs v. Draining Co.* 3 Metcalf (Ky.) 72.

GILL, J.—Upon a consideration of the record and evidence submitted, we find the material facts of this controversy to be as follows: In December last one J. H. Ramsey, a job printer, binder, etc., becoming financially embarrassed, made an assignment, under the statute, for the benefit of his creditors, and relator Henry S. Millett was made the assignee.

He qualified by giving bond, etc., and entered upon the discharge of his duties. In February, 1889, some of Ramsey's creditors filed a complaint in respondent's division of the Jackson circuit court, in which said assignment was pending, praying that Millet be removed as assignee. On March 9, following, the matter was heard by Judge FIELD, and an order was made, removing Millett from the trust, and appointing William Allbritain assignee in Millett's stead, said order directing and requiring Millett to deliver over all property, and assets of every description, belonging to the Ramsey estate, to the newly appointed and qualified assignee.

To this action of the court in removing Millett he, at the time, on said March 9, took exceptions, and filed his motion for a rehearing. After being duly qualified,

by giving bond, etc., Allbritain served Millett with 'a copy of the order of March 9, and demanded the assets of the estate. Millett refused, and proceeded with the administration, as though no such order had been made, and among other things he sat as assignee, and heard and allowed claims of March 18, 19 and 20, in pursuance of a notice theretofore by him given.

At the next session of Judge FIELD's court, on April 3, 1889, Allbritain, the newly appointed assignee, made report of this refusal by Millett and of his continued action as assignee, and the judge then and there directed an order citing Millett to appear April 8, following, and show cause why he should not be punished for a contempt for disobedience of the order of March 9, and for continuing to act as assignee, by allowing claims, etc. Millett, through his attorney then present on said April 3, while admitting disobedience of the order of removal, and the holding himself out as assignee, passing on claims, etc., as charged, insisted that he was so justified in holding out as assignee, because of his pending motion for a new trial, and then and there expressed his desire to appeal the judgment of the removal. That with that desire and intention, he was then ready to present and have allowed his bill of exceptions.

Judge FIELD refused to consider any bill of exceptions in the matter, alleging two reasons, to-wit: That Millett was in contempt, and that, at any event, there was no right to an appeal from the order of removal.

On the same day, April 3, the motion for a rehearing, or new trial, on the order of removal, was taken up and overruled by the court and exceptions noted. Millett, through his attorney, tendered a bill of exceptions, as well as affidavit and bond for appeal, but Judge FIELD refused to consider the same—to pass on the sufficiency thereof, or to permit these papers or either of them to be filed, denying that Millett had any right to appeal, and asserting another reason, to-wit: That

the applicant for appeal had no right thereto because of his admitted contempt—in disobedience of the order of March 9.

On this state of facts Millett, the relator, has asked this court to grant its writ of *mandamus* to enforce an alleged right to have his bill of exceptions allowed and signed, and affidavit and bond for appeal filed and appeal allowed from said order removing him as assignee.

I.   We are confronted on the very threshold of this case with the respondent's objection to our jurisdiction. It is alleged in effect, as the Ramsey estate exceeds in value the sum of twenty thousand dollars that this court has no jurisdiction, in *mandamus*, in relation to anything connected therewith.

We think this is scarcely a debatable question.   In proceedings in *mandamus* this court has original jurisdiction, concurrent with the supreme court, within the limits of its territorial jurisdiction, and its judgments therein are of like force and effect.   Const. Mo., art. 6, sec. 12; Const. Amend. Laws, 1883, sec. 4, p. 216.

"The mere fact, that the controversy may, or even does, involve questions of which the supreme court has exclusive appellate jurisdiction, does not oust this court of its original jurisdiction."   Section 5 of the constitutional amendment (Laws of 1883, p. 216) relates only to the appellate jurisdiction of this court.   *State ex rel. v. Seay*, 23 Mo. App. 628; *In re McDonald*, 19 Mo. App. 372.

This court has original jurisdiction in the matter of this remedial writ, bounded only by its territorial limits and unlimited as to the values or questions that it may involve.

II.   It is next urged by respondent, in his brief, that, even to admit relator's right to appeal from the order of removal, he is yet not entitled to *mandamus* as, it is claimed, relator has other adequate remedy.   It is too well settled to require citation of authorities that

the relator cannot invoke the extraordinary writ of *mandamus* if he has any other adequate legal remedy for relief. The question now is, has the relator (if entitled to an appeal) any other adequate remedy. In view of the position taken by the circuit judge, in the matter of the bill of exceptions sought to have allowed by relator, what could relator do towards taking the matter up for review to the appellate court? It is said he might apply to the appellate court for a writ of error as provided in article 12, Revised Statutes, 1879, or for an appeal as provided in section 3714, Revised Statutes; but how, under the circumstances of this case, could the unsigned bill of exceptions, sought to be allowed, be incorporated in the record? It is true the ''record proper,'' as it is called, including therein the petition of the creditors for Millett's removal, his answer thereto and judgment of ouster could be brought up by writ of error or appeal allowed by an appellate judge, but is there any mode provided by the law by which Millett could have completed or perfected this record, by adding thereto the matters contained in the bill of exceptions? We answer no, under the circumstances of this case.

Under the provisions of our statute law there is a way to perfect and settle a bill of exceptions, *provided* the judge of the circuit court shall *act* in the matter. If the bill, as presented by the litigant, is *true*, then there is a mandatory obligation on the judge to allow and sign the same, and it thereby becomes a part of the record of the cause. R. S., secs. 3635 and 3639.

If such bill, in the opinion of the judge is untrue, then the judge may refuse to sign the same for that reason, ''*and he shall certify thereon the cause of such refusal.*'' R. S., sec. 3637. Then a further step is provided, to-wit: By section 3638, Revised Statutes, after such refusal by the judge (and the refusal on the bill endorsed) the litigant may secure the same to be signed by three bystanders, and it shall then again be presented to the judge, and he shall, if he shall then believe it to be true, permit

the said bill to be filed. Then, further, if the judge even yet refuse to permit such bill to be filed, "and shall have certified that it is untrue," then (and only then) is it permitted either party to "take affidavits, not exceeding, five in number, in relation to the truth of such bill." R. S., sec. 3640. "Such affidavits shall then, within five days after the return of such bill of exceptions, so *certified to be untrue*, to the party presenting the same, be deposited in the clerk's office, and, on appeal or writ of error, copies of such affidavits shall be annexed to and form a part of the record of the cause." See section 3641, as amended, Laws, 1885, p. 215.

An issue of fact then is made by this rejected bill of exceptions, endorsed by the circuit judge that it is untrue; and affirmed to be true by the party presenting the same—and this issue is tried and determined by the court to which the appeal is taken, where if the appellate court finds in favor of the bill, and that it is true, such court will admit the same as part of the record. R. S., secs. 3642 and 3643.

It will be observed, by a careful consideration of these statutory requirements, relating to a bill of exceptions, that, before a suitor can get the benefit of a bill signed by three bystanders, the said bill must have been disallowed by the judge, and refused by him because untrue, and the cause of such refusal certified thereon under the hand of such judge. And it is equally clear that, before a suitor can ask an allowance of a bill of exceptions by the appellate court, he must show a compliance with the antecedent steps—that the bill was presented to the circuit judge and disallowed by him for the reason that it was untrue, and that such refusal was endorsed thereon, stating the reason therefor and that thereupon he had made further efforts to convince the judge of its correctness and had secured three bystanders to sign the same, and that even yet the circuit judge refused to permit the said bill to be filed. When *all* these antecedent steps are taken, *then the law permits the issue*

*of true bill, or not true bill,* to be settled in the appellate court, on affidavits taken, and *not till then.* So, then, when Judge FIELD unqualifiedly refused to *consider* even any bill of exceptions submitted by Millett, much less to reject the same as untrue and endorse thereon the reason for his refusal, he effectually deprived Millett of the right to perfect the record by adding thereto the matter contained in his bill of exceptions.

Conceding then the principles, in this behalf contended for by the respondent, it is yet clear in our opinion, that *mandamus* is the proper remedy to enforce action in the matter. Not to advise the judge *how* he shall act, but that he should move in the matter. If the party litigant, in due season, presents what he claims a true bill of exceptions it is the duty of the trial judge to act thereon. If true he should allow it, if *untrue* he should, while rejecting the same, endorse his refusal on the bill, and there in writing assign his reason for such refusal. If the circuit judge refuses to sign and allow a bill of exceptions because it is untrue, the appellate court will not by *mandamus* compel an allowance. But the judge should act,—allow or disallow. He cannot be permitted to sacrifice the rights of litigants by his inaction. *State ex rel. Wittenbreck v. Wickham,* 65 Mo. 634; *State ex rel. Kinealy v. Thayer,* 15 Mo. App. 391; *Downing v. Shacklett,* 49 Mo. 86.

III. We next direct our attention to the principal matter of controversy, to-wit: Has relator Millett a legal right to appeal from the order or judgment removing him as assignee of the Ramsey estate? If, indeed, relator has no such right of appeal, then, of course, Judge FIELD rightly denied permission to file a bill of exceptions, or bond and affidavit for appeal. The solution of this question is found in the construction of our statutes on the subject. We have been referred to a number of authorities in relation to *receiver's* right of appeal on order of removal, and some few relating to such right in an assignee, but they lend little light to

the decision of this case.   These voluntary assignments are creatures of statute, and by our statutes the administration thereof is marked out.

Under our law controlling voluntary assignments (R. S: 1879, chap. 5), there are several proceedings, principal and ancillary, looking to the winding up of the estate.   Among these may be mentioned the appointment, qualification and duties of the assignee, and then for his removal and appointment of another in his stead.   We have, too, the manner of presenting and allowing claims by the assignee with a separate section providing appeals from the judgments of the assignee.

The assignee may be dismissed for various reasons assigned by the statute, such as failing to file an inventory, or to give bond, failing to pay over dividends, etc.   Besides, by section 389, it would seem, the court may cite the assignee to appear and answer complaints of maladministration or unfitness preferred by creditors, and "to do and abide such order as to it shall seem fit and lawful in the premises," etc.   Provisions are made for final settlement by the assignee, allowance of fees, compromising claims," etc.   Then we have, in the latter part of this chapter on voluntary assignments relating to these various proceedings, a provision in reference to appeals to be allowed from the circuit court.   Section 393 reads as follows :

"Exceptions to any of the decisions of the court, *in any of the proceedings* under this chapter, may be taken and preserved by any party in interest to the proceedings, as exceptions are provided for in ordinary actions; and appeals or writs of error may be made or taken to the supreme court, etc.   *   *   *   as, and upon the terms in ordinary cases, within sixty days after the final disposition of the proceedings in which such objections are taken, and not after."

Notwithstanding the able arguments of learned counsel, we discern no good reason for withholding the

operation of this section on proceedings (such as the one against Millett) for removal of the assignee, selected and qualified, as he was, under the statute. He was a statutory assignee—a trustee—performing duties under that statute.　He was proceeded against by creditors, as provided they might under section 389, and the court, after hearing, had pronounced judgment of ouster against said assignee.　This was a final judgment, in one of the "proceedings under this chapter," and the assignee, so proceeded against, and against whom said order or judgment was rendered, was a "party in interest to the proceedings," and as such was entitled to have his exceptions to the court's rulings saved and preserved.　We need not, in thus holding, disagree with the Kansas supreme court (15 Kas. R. 501), where it is held that "whenever the legislature has used a word in a statute in one sense, and one meaning, and subsequently uses the same word in relation to the same subject-matter, it will be understood to use the said word in like sense or meaning, unless there is something in the context, or the nature of things to indicate a different or more extended meaning." "Parties in interest" or "interested parties," wherever used in this statute, has the same general meaning. A creditor, seeking to have his claim allowed, is a party in interest, and so he is a party in interest when petitioning for the removal of the assignee.　So, too, is the assignee a party in interest in proceedings against him for removal.

In determining the meaning of the words of a statute we shall assume they are used with their ordinary signification.　"If the intention of the legislature is manifest and unmistakable, the plain meaning should never be sacrificed to verbal distinctions and technical criticism."　*Boggs v. Brooks*, 45 Mo. 233.　In their contention that an assignee has no interest and therefore not entitled to the appeal, the law-writers and

judges are cited as declaring that an officer has no such *vested property* in his office as will save him from being disturbed, or his office destroyed by the power that created it.

This is an unquestioned law. The party selected to fill an office, created by the legislative power, has no such contract, no such vested right, but that the creating power may abolish the office during his term, unless of course some constitutional provision shall intervene to prevent. *Primm v. Carondelet*, 23 Mo. 22; Cooley on Const. Lim., side p. 276 *et seq. ; State ex rel. v. Davis*, 44 Mo. 131. But even in such a case, where such right to an office is litigated, is not such an officer "a party in interest" in such litigation ?

Would it be contended, that in a proceeding by *quo warranto* to oust an officer, that he would not be allowed an appeal, because he had *no vested right* to the office, such as could not be taken from him by the power that made the office. This order or judgment removing Millett was, too, such a final judgment and in such a proceeding from which an appeal would lie. *State ex rel. Spickerman v. Allen*, 92 Mo. 25 ; *McCrary v. Menteer*, 58 Mo. 446 ; *In re Estate of McCune*, 76 Mo. 200.

In *Spickerman v. Allen, supra*, the supreme court held, under a statutory provision similar to that in the assignment law, that a guardian was entitled to an appeal from the order of the probate court removing him, and *mandamus* was issued commanding an allowance of an appeal.

We have attempted no review of the numerous authorities from other states and from the text books as to the right, or want of right, of appeal which receivers may have, for the reason that, in our opinion, the statutes of this state have fixed the right in the assignee in this character of proceeding, and we are not called on to express an opinion as to the wisdom, or justice, of the law.

Nor are we to answer the embarrassments, that may come, on the estimation of respondent's counsel, from permitting a distasteful assignee to continue official relations with an unwilling court. If this is the outrage, which eloquent counsel refer to as so alarming then we can only answer "thus the law is written," and we are absolved from any degree of blame in the matter.

IV. A further question is this: Was Millett's disobedience of the order of March 9, and his continued acts as assignee, in face of that order of the court commanding him to desist and turn over the assets to Allbritain, such as to bar his right of appeal?

From the facts as we find them, it is clear, that on April 3, when Millett tendered the necessary papers, and asked an appeal from the order of March 9, he was in contempt of the order and proceedings of the court to which he was applying. The evidence does not show an *intentional* wrong ( as commonly understood ) as it seems he was acting under advice of counsel. He was, however, in open disobedience of the orders of a court in the rightful exercise of its lawful jurisdiction. It matters not whether the order of removal was correctly made, or was improvident or erroneous. If the court had jurisdiction to make the order, it was contempt of court to disobey it. *State v. Horner*, 16 Mo. App. 192.

But it is contended by relator's counsel, that as there was a motion for rehearing or new trial pending, the order on Millett removing him and requiring him no longer to act as assignee, was thereby suspended. The pending of such a motion could have no such effect. That order could not be superseded, except by a bond and affidavit in appeal entitling the appellant to a *supersedeas*. *People ex rel. Day v. Bergen*, 53 N. Y. 410; *Ortman v. Dixon*, 9 Cal. 23; *Vose v. Trustees*, 2 Woods, U. S. C. C. But, being in contempt, was the court thereby authorized to deny Millett the right to appeal from its judgment. We think not. The right

of appeal was a matter of strict right, not a matter of favor or grace of the court; and, being so, the court could not legally refuse its exercise. *Brinkley v. Brinkley*, 47 N. Y. 49; *Hazard v. Durant*, 11 R. I. 195.

V. Notwithstanding the merits of the controversy, thus far discussed, are so largely with relator Millett, yet from the nature and scope of the petition and alternative writ, we must deny the issue of a peremptory writ.

The petition and alternative writ declares and recites, that relator tendered his bond for appeal, that the same was in the penal sum of five thousand dollars. and was "executed by relator as principal with two sufficient securities." The alternative writ commands respondent, in addition to signing and allowing the bill of exceptions (if the same is true) that he also permit to be filed the "certain affidavit and bond for appeal heretofore tendered your said court," etc., "and if the same be *in form* according to law, to proceed to allow the appeal therein prayed for by said relator from your judgment," etc.

Now the relator, in our opinion, is shown to be entitled to a *portion of* that asked for in the petition, and commanded in the alternative writ. He is entitled to an allowance of the bill of exceptions, if true, and the right to file his affidavit for appeal, if in proper form, as prayed for, but this court cannot command the circuit judge to permit relator to file the appeal bond, alleged to be in the sum of five thousand dollars signed by relator and two securities. The penalty of that bond, and the sufficiency of the securities thereon, are matters to be left to the judgment of the court where the same is to be filed, and it is not in our power to exercise this judgment and discretion for, or on behalf of, said court. It is not the province of *mandamus*, in dealing with subordinate tribunals, to command

State ex rel. Millett v. Field.

any particular judgment, or to require the exercise of a discretion, reposed by law in such court, in a particular way.

The superior court may command the lower court to move, but not to move or decide a judicial act in a particular way. R. S. 1879, sec. 3713; *State ex rel. v. County Court*, 68 Mo. 48; *State ex rel. v. Laughlin*, 75 Mo. 366; *State ex rel. v. St. Louis Court of Appeals*, 87 Mo. 376; High on Ex. Leg. Rem., sec. 533.

The peremptory writ of *mandamus* must conform *strictly* with the terms of the alternative writ. If more is asked for in the relator's petition, and demanded in the alternative writ, than can be granted in the peremptory writ, then the peremptory writ must be denied altogether.

It seems a harsh rule, but such is now well settled in this state by our supreme court, and by its rulings we are constitutionally bound. In 53 Mo. 156, and 73 Mo. 627, it was held otherwise, and it was said that the relator should be entitled to a remedy corresponding with the case made, even though the peremptory writ might differ from the alternative.

However these cases have been expressly overruled, and the law is as above declared. Says HENRY, J., in delivering the court's opinion in *State ex rel. v. Railroad*, 77 Mo. 147:

"Holding that relator is entitled to a portion of what is asked for, but not the balance, can we grant the prayer and award the peremptory writ for that to which he is entitled?" High in his work above cited says: "It is a well-settled principle that the peremptory writ must conform strictly to the alternate *mandamus*, being necessarily limited as to form by the terms of the alternative writ.

"In other words, the courts are powerless to award peremptory writ of *mandamus* in any other form than that fixed by the alternative writ. It follows, therefore, that, if the alternative writ commands the doing of several

things, it is incumbent upon the relator, in order to entitle him to the peremptory writ, to show that he is entitled to the performance of *all* the things specified, and if he fails in any substantial part in establishing his title to any of the things sought, there can be no peremptory *mandamus*." See other cases cited, 77 Mo. at p. 148. This rule is adhered to in the later case of *School Dis. v. Lauderbaugh*, 80 Mo. 190. We cannot command the filing of this appeal bond. It may, and probably will, be unsatisfactory in *amount*, if not in the matter of the persons offered as securities.

Being unable then to award a peremptory writ of *mandamus* conforming to the alternative writ, we must deny the same. Writ denied. The judges all concur. Ellison, J., expresses no opinion on division number 3 of this opinion.