JOHN J. RILEY, Respondent, v. THE CITY OF KANSAS, Appellant.

Kansas City Court of Appeals, June 13, 1888.

1. POLICEMEN—ACTION AGAINST CITY FOR SERVICES — SANFORD v. KANSAS CITY REAFFIRMED.—It was expressly held in *Sanford v. City of Kansas*, 69 Mo. 466, that a policeman could not, without first obtaining from the board of police commissioners a warrant therefor on the city treasury, maintain an action against the city for his services. His remedy in such a case is by *mandamus* to the board of police commissioners to compel the issuance of the proper warrant.

2. KANSAS CITY—BOARD OF POLICE COMMISSIONERS FOR — WHO INVESTED WITH POWER OF REGULATING COMPENSATION OF POLICE OFFICERS.—Under the act of the legislature (Laws of Mo. 1874, p. 327) creating the board of police commissioners for Kansas City, the board, and not the city council, was invested with the power and duty of fixing and regulating the compensation of police officers. The act gives the board the exclusive control of the members of the police force. (*Flanagan v. City of Kansas*, 69 Mo. 462.)

3. ———— REMEDY OF POLICEMAN AS AGAINST BOARD — CASE ADJUDGED.—If the board of police commissioners (as is alleged here) wrongfully dismissed the plaintiff from his office, without cause and trial, he had a clear remedy by *mandamus* to compel his reinstatement. (High on Ex. Rem., secs. 67, 69.)

APPEAL from Jackson Circuit Court, HON. TURNER A. GILL, Judge.

*Reversed and petition dismissed.*

The case is stated in the opinion.

R. W. Quarles and W. A. Alderson, for the appellant.

The Supreme Court has directly decided that an action of this nature cannot be maintained against the City of Kansas. The act establishing the board of police commissioners and the amendment thereto are alone sufficient to emphatically negative the city's liability to the appellee, his suit not being on a warrant drawn on the city by the board. Argument to any extent would be superfluous. The three assignments of errors may be reduced to the single proposition that this action cannot be maintained, and the judgment should be reversed and the cause dismissed. *Flanagan v. City of Kansas*, 69 Mo. 462; *Sanford v. City of Kansas*, 69 Mo. 466; Acts of 1874, p. 327; Acts of 1875, p. 193.

Chase & Powell, for the respondent.

I. While no such position was taken in the court below, it appears from cases cited in appellant's brief (69 Mo. 466) that defendant now claims that plaintiff's proper remedy was a writ of *mandamus* to compel police commissioners to issue warrants for amount due plaintiff, and then a suit against the city upon such warrants. If such be plaintiff's proper course, for how much should the warrants have been ordered on the first count of plaintiff's petition, which is for a breach of the contract of hiring? Is the court first to hear evidence as to the liability of the city to plaintiff, and the amount of such liability, and then by its writ of *mandamus* command the board of police commissioners to issue the warrants for such amount in favor of plaintiff, as the basis of his action against the city? We find neither law nor precedent for such legal absurdity, and if such course be unreasonable and absurd, how can it be said that the issuance of warrants must first be commanded before the city is liable for payment of services rendered by its police officers? And especially

when the fourteenth section of the act creating a board of police commissioners ( *Sanford v. The City of Kansas*, 69 Mo. 467 ) "provides two modes whereby the members of the police force are to be paid : First, the board is to make requisition upon the disbursing officer of the city for the requisite sum ; second, in case the common council fail to make the requisite appropriation, or the disbursing officer fail to pay, then it becomes the duty of the board to issue warrants in the name of the City of Kansas for the requisite amount.

II.  Defendant very nearly takes the position that if the agent of a principal refuses to pay out money put in his hands for a specific purpose, and recognized indebtedness, that his principal is thereby released from liability for such services.  This proposition seems to be without authority or precedent, unless the case by appellant cited, in 69 Mo. 466, may be called a precedent, and against this we protest, as we are unable to apply the law of that case to the opposite state of facts here existing.  We think it doing violence to the opinion in said case rendered, to draw an inference even that the "two modes whereby the members of the police force are to be paid" were to be invoked at the same time, and for the same purpose, or that warrants, as provided in the second "mode," should be issued in payment of policemen's claims for services, when the money therefor had already been appropriated and placed in the hands of board of commissioners for payment of same claims for which warrants would issue, if issued at all ; or, when the first mode had been adopted.  Why, the warrants are but the written obligation of the city to pay.  And the act nowhere contemplates that the city must give her note in payment for policemen's services, "bearing interest at six per cent. per annum, payable on demand," when the city has the money on hand and drawing no interest, for the payment of such services.  We neither understand said opinion (*Sanford v. City of Kansas*, 69 Mo. 466) to support the position of defendant, that city is not proper party defendant, nor to hold the doctrine

that "*mandamus* against board of police commissioners," commanding them to issue warrants, is plaintiff's appropriate remedy, when the first mode of paying has been adopted and money is in hands of party legally authorized to pay.

III. This seems to us a delegation of agency. Their services are performed for and on behalf of the city. They have express power to bind the city in the line of their services. And they are paid by the city for such services. *Barnes v. Dist. Columbia*, 1 Otto [U. S.] 540; *Denoy v. Mayor*, 39 Barb. [N. Y.] 169; *People v. Mayor*, 25 Wend. [N. Y.] 680; *Green v. Mayor*, 2 Hilton [N. Y.] 203.

IV. In *Green v. Mayor*, 2 Hilton [N. Y.] 203, the court say the defendant's liability is fixed by competent authority, and defendant is subject to the ordinary modes of having legal liabilities enforced. Citing, also, 25 Wend. 680, above cited. In the case at bar, defendant's liability is fixed by statute, "competent authority," and, as warrants are only required to be drawn for pay of policemen, in case the city refuses to make an appropriation, or the disbursing officer fails to pay over the same to the board, we see no reason why defendant is not "subject to ordinary modes of having legal liability enforced." And this is not by *mandamus* for warrants, in cases where no warrants are required, but by the mode herein invoked. In what cases courts may issue writs of *mandamus* and other remedial writs, has not been prescribed in the constitution authorizing such writs, nor in our written law, otherwise than by the adoption of the common law, which defines the class of cases to which they are respectively applicable. *Dunklin County v. District County Court*, 23 Mo. 449; *State ex rel. v. Lafayette County Court*, 41 Mo. 225.

V. And again, *mandamus* will not lie where the amount is in dispute. *The People ex rel. v. Hawkins*, 46 N. Y. App. 11; *The United States ex rel. v. Edmunds, Commissioner*, 5 Wall. 563; *People ex rel. v. Leonard*, 74 N. Y. App. 443.

VI. Plaintiff herein sues for breach of contract of hiring, and also for services rendered. Two questions, therefore, are here in dispute: First, is plaintiff entitled to anything? Second, if so, how much? We recur, then, to the only question before the court in this case: Can a policeman maintain an action against the City of Kansas for a breach of contract of hiring, or for services rendered said city as a police officer? Authorities above cited expressly hold that such action cannot be brought against the board of commissioners. Then, if not against the city, is a police officer without remedy?

PHILIPS, P. J.—The petition contains two counts. The first alleged that the plaintiff, in 1883, was appointed and employed by the board of police commissioners for the defendant city, as a policeman for the period of three years, at the stipulated sum of $72.50 per month; that he entered upon such service and so continued until the nineteenth day of May, 1885, when he was, without cause or trial, unlawfully discharged from his office and employment by said commissioners, and wrongfully deprived of the benefit of such compensation for the residue of the term of his appointment; wherefore he asked judgment, etc. The second count was *indebitatus assumpsit*, for three months' service rendered defendant by plaintiff as policeman.

The answer, after tendering the general issue, as to matters not admitted, pleaded that the authority and responsibility for such appointments and dismissals belonged exclusively to the board of police commissioners, and that the defendant was not liable therefor in a direct action. Judgment for plaintiff on both counts; from which defendant has appealed.

I. The single question presented by this appeal is, whether or not the defendant city is liable in this form of action for the imputed acts and defaults of the board of police commissioners? As to the second count, which as shown by the proofs was for nineteen days' pay due plaintiff at the time of his discharge, we are of

opinion it is not maintainable. It was expressly held in *Sanford v. City of Kansas*, 69 Mo. 466, that a policeman could not, without first obtaining from the board of police commissioners a warrant therefor on the city treasury, maintain an action against the city for his services. His remedy in such case is by *mandamus* to the board of police commissioners to compel the issuance of the proper warrant. We are bound by that decision.

II. While the precise question involved in the first count has not been passed upon by the Supreme Court, we are of opinion that the principle involved is covered by said decision and that of *Flanagan v. City of Kansas*, 69 Mo. 462. In the last-named case it was held, that under the act of the legislature (Sess. Acts 1874, p. 327) creating the board of police commissioners for Kansas City, the board, and not the city council, was invested with the power and duty of fixing and regulating the compensation of police officers. SHERWOOD, C. J., who delivered both opinions, said: "We are satisfied, upon examination, that the act establishing the board of police commissioners gave that board the exclusive control of the members of the police force." In the *Sanford case* he held the following language: "To the board of police commissioners belonged the exclusive control of all matters pertaining to the employment, pay, and regulation of the police force of the city. * * * As the law organizing the police board has confided to their special care the matters pertaining to the pay of policemen, and specified a particular way for them to be paid, we incline to the opinion that the method thus pointed out should be pursued; for the latter clause of section fourteen prohibits in unmistakable terms the mayor and council to appropriate and disburse money for the payment of the police force, except as they are in that section authorized. We do not think it was the design of the legislature, after making such explicit provisions for the employment and payment of the police force, that those provisions should be wholly disregarded, and the city

subjected to the annoyance and costs of suits as numerous as the policemen who choose to bring them."

It is clearly manifest, to my mind, from the whole tenor and scope of the act creating the board of police commissioners, that it was the design of the legislature to make the board entirely independent, in their administrative capacity, of the control, interference, or authority of the city government. The familiar history of the popular demand, respecting the administration of police government in our metropolitan cities, leaves little room for doubt as to the intent and policy of the legislative scheme. The commissioners owe not their appointment to the city. They derive none of their powers from its charter. They receive their appointment and commission from the Governor of the state; and are essentially officers of the state. Their powers and duties are all derived from and defined by the legislative act. These municipal communities are such important integral parts of the state as to make the administration of the police law among the local constituency of vast public importance; well justifying its commission to its own appointed board, wholly independent of the municipal authorities or responsibility.

The first section of the act, while recognizing the right of the city to make its own ordinances for the preservation of police order, expressly restrains the mayor and common council to such ordinances as shall in "no manner conflict or interfere with the powers or the exercise of the powers of the board of police commissioners."

The second section repeals and nullifies all the provisions of the city charter or any of its ordinances, which "authorize the common council, the mayor and marshal, to appoint, pay and regulate the police of said city."

Section six gives the sole power of appointment, management and dismissal, of the police force to the police commissioners.

Section ten gives power to the said board "to make

and enforce all rules and regulations, not inconsistent with this act, as they may deem necessary for the appointment, employment, uniforming, discipline, trial and government of the police," etc. And by section thirteen, it is declared that, after the passage of said act, and the first meeting of said board, "the whole of the existing police force in the City of Kansas, both officers and men, shall pass under the exclusive control and management of the said board, and be subject to no other control, and entitled to receive neither orders *nor pay*, except arrearages then due, from any other authority." And, as if to leave no possible doubt as to what was intended, and to emphasize the complete divorcement of the police board from the city authorities, the section concludes with an absolute negation of the right or power of the mayor or common council, to appoint or dismiss, or in any manner employ or control the police force organized by the commissioners.

The fourteenth section then proceeds to point out the manner of providing the funds to pay for the force. Without the action of the police board the city authorities have no power to appropriate a dollar on account of the appointments of the board.

It is needless to look to the language of courts in other jurisdictions, in passing on the liability of cities for injuries and other accountability consequent upon the omission of certain duties by commissioners appointed from without. This act is *sui generis*. Its purpose, language and affirmative provisions are such as to preclude the idea of a suit directly against the city for the imputed misconduct of the police commissioners. The power to employ and dismiss policemen is lodged with the commissioners, the officers of the state. The city has no voice in the matter. It can neither control nor make suggestions to the commissioners in such matter. The commissioners are the functionaries and agents of the state, and not of the city, in employing and discharging policemen. They are not accountable to the city for their action. The city is more the agent of the

commissioners in enabling them to carry out the legislative powers. The commissioners employ, control, and fix the compensation of the policemen. It is the bounden duty of the city government to appropriate the necessary funds on the requisition of the police board to pay the policemen, and not otherwise ; and it would be compelled, at the relation of the police board, to proceed to make such appropriation. It can only pay upon the warrant of the board.

If the board of police commissioners, as alleged, wrongfully dismissed the plaintiff from his office, without cause and trial, he had a clear remedy by *mandamus* to compel his reinstatement. High on Extr. Rem., secs. 67, 68, 69.

The city being without power to pay the policemen without first having a warrant from the police commissioners this action must fail.

The other judges concurring, the judgment of the circuit court is reversed, and the petition dismissed.