THE STATE OF MISSOURI ex rel. W. H. GOODNOW, Respondent, v. POLICE COMMISSIONERS OF KANSAS CITY et al., Appellants.

Kansas City Court of Appeals, April 24, 1899.

1. **Police Commissioners:** STATE LAW V. KANSAS CITY CHARTER: DISMISSAL OF POLICEMAN. Under the charter of Kansas City the police commissioners may not discharge a policeman without complaint and without a notice and hearing, but under the act of 1874 they may discharge a policeman for the purpose of reducing the force without such complaint, notice and hearing.

2. ———: ———: ———. In matters of purely municipal concern the Kansas City charter may supersede the provisions of general law on the same subject when not inconsistent therewith, yet the charter must be made in subjection to the general law; and section 6 of the act of 1874 measures the power and authority of the police commissioners of Kansas City with reference to the discharge of members of the police force, and where the charter conflicts therewith the act governs. Cases considered and discussed.

3. **Mandamus:** PEREMPTORY MUST FOLLOW ALTERNATIVE WRIT: RELATOR'S BURDEN. A peremptory writ must substantially follow the alternative writ since it must be enforced in the terms in which it issued or not at all; and the relator must show his title to a performance of all the things specified or there can be no peremptory writ. The striking out in a peremptory writ the clause "from July 22, 1897, until he be reinstated" and ordering a warrant for $373 instead of $770, as commanded in the alternative writ, are fatal.

4. ———: DISCHARGING POLICEMAN: RELATOR'S DUTY: PLEADING. In a mandamus proceeding it is relator's duty to state all facts necessary to entitle him to the issuance of the writ, and an allegation that he was discharged in violation of the charter will confine him to that wrong; and if he was relying upon a violation of the state law, he should so allege, and general statements that his discharge was wrongful, etc., are not sufficient.

5. ———: OFFICES AND OFFICERS: REINSTATEMENT: SALARY. An action for salary can not be maintained by an officer out of possession of the office before his right to the office has been judicially ascertained by an action to which the occupant of an office is a party, and mandamus can only reinstate to an office one who has been wrongfully discharged but can not order the payment of his salary while out of office.

ON MOTION TO TRANSFER TO SUPREME COURT.

6. **Offices and Officers:** POLICEMAN: APPELLATE JURISDICTION. The office of policeman is an "office under this state," but policemen do not fall under the clause of the constitution referring to state officers in the sense that courts of appeals would be deprived of jurisdiction merely by their being parties to a cause.

7. **Mandamus:** OFFICES AND OFFICERS: TITLE TO OFFICE: REINSTATE-MENT. Mandamus is not a proper proceeding to try the title to an office but is a proper remedy to reinstate an officer wrongfully discharged, and in this case the only controversy between the parties is the power of removal.

8. **Jurisdiction:** COURT OF APPEALS: OFFICES AND OFFICERS: REIN-STATEMENT. An action to reinstate an officer does not involve title to the office but is possessory in its character and a court of appeals has jurisdiction to hear said proceedings.

9. **Mandamus:** REINSTATEMENT TO OFFICE: EXPIRING TERM: FRUITLESS PROCEEDING. An unavailing writ of mandamus will be withheld, and where the term of an office will expire before a writ of reinstatement can be made effective, it will not issue.

10. **Appellate Practice:** CERTIFYING TO SUPREME COURT. Where either member of a court of appeals deems a decision contrary to a controlling decision of the supreme court, the court of appeals will transfer the cause, otherwise not. State v. Vallins, 140 Mo. 523, has no application to this case.

State ex rel. v. Police Commissioners.

*Appeal from the Jackson Circuit Court.*—HON. E. P.
GATES, Judge.

REVERSED.

R. B. MIDDLEBROOK for appellants.

(1)    It appears on the record that the alternative writ
and the peremptory writ vary from each other, thus a fatal de-
fect apparent of record and justifies a reversal of the case.
Bateson v. Clark, 37 Mo. 31; Bagby v. Emberson, 79 Mo.
139; Funkhouser v. Mallen, 62 Mo. 555; McIntire v. McIn-
tire, 80 Mo. 470; State ex rel. v. Scott, 104 Mo. 31; Land Co.
v. Bretz, 125 Mo. 418; Lilly v. Menke (where the whole sub-
ject is reviewed), 126 Mo. 211; Railroad v. Lewright, 113 Mo.
660; Railroad v. Carlisle, 94 Mo. 166; Swaggard v. Hancock,
25 Mo. App. 596; State to use v. White, 61 Mo. 442.    This
doctrine is particularly true where the petition fails to suffi-
ciently state a cause of action.    Weil v. Greene Co., 69 Mo.
286; Miller v. Davis, 50 Mo. 572; Smith v. Burrus, 106 Mo.
97.    (2)    There can be no question but that the law of this
state is well settled that the peremptory writ must comply
strictly in its terms with the alternative writ.    State ex rel. v.
Railway, 77 Mo. 147; State ex rel. v. Field, 37 Mo. App. 83;
State ex rel. v. Davis, 54 Mo. App. 451; State ex rel. v. Fin-
ley, 74 Mo. App. 217; High on Extra Legal Rem. [3 Ed.],
sec. 539; School Dist. v. Lauderbaugh, 80 Mo. 190; Tapping
on Mandamus, 324-327; Rosenfield v. Einstein, 46 N. J. L.
479. (3) The petition and alternative writ do not state facts
sufficient to constitute a cause of action.    State v. Jamel, 31
La. Ann. 142; State v. Kenney, 9 Mont. 389; State v. Hol-
laday, 65 Mo. 76; Carr v. State, 127 Ind. 204; Kansas City
Charter [Ed. of 1898], secs. 15, 16, art. 11, p. 107; Session
Acts 1874, p. 322, sec. 14.    And the petition must state that
there is money appropriated, or apportioned, or available to

meet the payment of the warrant, or the petition is bad. Redding v. Bell, 4 Cal. 333; Session Acts 1874, page 332; Charter of Kansas City 1889, sec. 22, art. 4, p. 55; High on Extra. Legal Rem. [3 Ed.], secs. 358-359; Burnet v. Auditor, 12 Ohio 54; Commonwealth v. Commissioners of Alleghany, 16 S. & R. 317; 14 Am. and Eng. Ency. of Law [Ed. of 1890], p. 104, sec. 9; Board of Police v. Grant, 9 S. & M. (Miss.) 91; Governor v. Justices Clark Co., 19 Ga. 102; Board Supervisors v. Arghi, 51 Miss. 667; Morrill on Mandamus, sec. 257; Moses on Mandamus, p. 204; Kemerer v. State, 7 Neb. 130; 14 Am. and Eng. Ency. of Law [1 Ed.], p. 167; Topping on Mandamus, pp. 282, 287; 14 Am. and Eng. Ency. of Law [Ed. 1890], p. 106, sec. 12; High on Extra Legal Rem. [3 Ed.], sec. 41, and cases cited; Chauce v. Temple, 1 Iowa 189; State v. Schaack, 28 Minn. 358; State ex rel. v. Smith, 31 Neb. 590; Moses on Mandamus [Ed. 1878], pp. 18, 129; State ex rel. v. Davis, 17 Minn. 429. (4) A peremptory writ will not issue to restore relators to their positions on the police force for the reason that the three years' time for which they were commissioned has expired. It is somewhat similar to an action in the nature of *quo warranto* to restore a person to an office when the term to which he is alleged to have been elected has expired. Therefore, this part of the relator's case is, so to speak, *functus officio*. The relators were all commissioned May 4, 1895; their terms expired May 3, 1898. 14 Am. and Eng. Ency. of Law [Ed. 1890], p. 104, sec. 10; Woodbury v. Co. Comm., 40 Me. 306. A mandamus will not be granted to aid one in obtaining an office two months before the expiration of the term when this would only lead to further litigation for fees and salary. State ex rel. v. Finley, 74 Mo. App. 213. Cases may arise where the applicant for relief has an undoubted legal right for which mandamus is the proper remedy, but where the court may, in the exercise

of a wise judicial discretion, still refuse relief.   State ex rel.
v. Railroad, 77 Mo. 143; People v. Seymour, 6 Cow. (N. Y.)
579; Queen v. Baldwin, 8 Ad. & E. 947; State ex rel. v.
Police Commissioners, 88 Mo. 144; s. c., 14 Mo. App. 297;
Moses on Mandamus, p. 190.   (5)   Writ will not issue where
it will prove unavailing.   High on Extraordinary Legal
Remedies, sec. 14, note, and sec. 64, and authorities there
cited; State ex rel. v. Finley, 74 Mo. App. 213; State ex rel.
v. New Orleans, 49 La. Ann. 946; 22 So. Rep. 370.

## ON MOTION TO TRANSFER TO SUPREME COURT.

(6)   The contention that these policemen are state
officers, while true in one sense, is not tenable for the purposes
assigned in respondent's brief.   Our supreme court has settled
that point against respondent by using the following lan-
guage in construing the very clause in the constitution of the
state relied on by respondent.   State ex rel. v. Dillon, 90
Mo. 229; State ex rel. v. Spencer, 91 Mo. 206.   (7)   In
Missouri the law is definitely settled that *quo warranto* is the
remedy to try title to an office and that in mandamus proceed-
ings in this state title will not be inquired into.   This suffices
to dispose of the contention of the respondent that the title
to office is involved in these suits.   High on Extra. Legal
Rem. [3 Ed.], secs. 49 to 53, inclusive; State ex rel. v. State
Auditor, 34 Mo. 375; State ex rel. v. State Auditor, 36 Mo.
72; County Court v. Sparks, 10 Mo. 120; State ex rel. v.
John, 81 Mo. 13; State ex rel. v. May, 106 Mo. 508; Britton
v. Steber, 62 Mo. 370.

WALLACE & WALLACE for respondent.

(1)  Appellants having failed to file a bill of exceptions
in this court, and there being no motion to quash the alter-
native writ, or motion for new trial or in arrest, there is noth-
ing   for   this   court   to   review,   and   the   judgments

should be affirmed. United States v. Gamble & Bates, 10 Mo. 457; State v. Fortune, 10 Mo. 466; State v. Batchelor, 15 Mo. 207; State v. Wall, 15 Mo. 208; State v. Gee, 79 Mo. 313; State v. Thruston, 83 Mo. 271; State v. Vincent, 91 Mo. 662; State v. Henderson, 109 Mo. 292; State v. Fraker, 137 Mo. 258; State v. Handley, 144 Mo. 118; State v. Griffin, 98 Mo. 672; McCarthy v. McGinnis, 76 Mo. 344; Blount v. Zink, 55 Mo. 455; Martin v. Est. of Nichols, 63 Mo. App. 342. (2) Mandamus is the proper remedy to restore a person to an office from which he has been removed and to which he is entitled. Riley v. Kansas City, 31 Mo. App. 439; Gill v. Common Council of Watertown, 9 Wis. 254; Lindsay v. Luckett, 20 Tex. 516; Ex parte Wiley, 54 Ala. 226; High on Ext. Rem., secs. 67, 68, 69. (3) Mandamus is the proper remedy to compel the issuance of the proper warrant for salary of policemen improperly discharged. Riley v. Kansas City, 31 Mo. App. 439; Sanford v. Kansas City, 69 Mo. 466; Flanagan v. Kansas City, 69 Mo. 462; Swift v. New York, 83 N. Y. App. 528; People ex rel. v. Board of Police, 75 N. Y. App. 38; Dannat v. Mayor, 66 N. Y. App. 585. (4) A patrolman of the police force of Kansas City can only be removed for cause or complaint made and after a hearing by the board. State v. Vallins, 140 Mo. 523. And a fixed term carries with it the right not to be removed except for cause. State ex rel. v. Brown, 57 Mo. App. 199. (5) The general rule as to the discharge of officers is that where an officer is appointed during pleasure or where the power of removal is discretionary, the power to remove may be exercised without notice or hearing; but where the appointment is during good behavior, or where the removal must be for cause, the power of removal can only be exercised when charges have been made against the accused and after notice with a reasonable opportunity to be heard before the officer or board having the power to remove. State ex rel. v. St. Louis, 90 Mo. 19; State ex rel. v. Walbridge, Mayor, 119 Mo. 383; State ex rel. v.

Police Commissioners, 14 Mo. App. 297; Dillon on Mun. Corp. [3 Ed.], secs. 250-254; Dullam v. Willson, 43 Mich. 393; 32 Pa. St. 478; 82 Mich. 255; 80 Mich. 187. (6) This court has no jurisdiction in a case "involving title to an office under this state." State ex rel. v. Rombauer, 101 Mo. 499. Office in that case was that of circuit clerk. See, also, Britton v. Steber, 62 Mo. 370. But state law on which this court relies expressly declares that policemen are state officers. Acts 1874, sec. 18, p. 333. See, also, Dillon on Mun. Corp. [3 Ed.], secs. 58 and 60. In foot note at page 33 Mr. Dillon says, "the cases concur in holding that police are in fact state officers and not municipal, although a particular city or town is taxed to pay them."

ELLISON, J.—The relator was appointed a policeman for Kansas City, Missouri, by the board of police commissioners of said city, on the fourth day of November, 1895, for period ending on the fourth day of May, 1898. He was discharged by said board, before the expiration STATEMENT.    of his term, to wit, on the twenty-second day of August, 1896. Afterwards, on the first day of October, 1897, in the circuit court of Jackson county, he begun the present proceeding in mandamus against the police commissioners to compel them to reinstate him and to compel the president of the board to draw a warrant for the sum of $770 in his favor being the sum his salary would have amounted to in the time between his discharge and his application for the writ. An answer was made to the alternative writ. After hearing the cause, the circuit court awarded a peremptory writ and respondent has appealed.

The ground on which relator's application for the writ is based is that the police commissioners discharged him without right, or authority in law, in that the discharge was made without notice to him and without giving him a hearing. The case concedes that defendant was discharged without com-

plaint being made, charges preferred, or notice, or hearing given. The answer does not deny this, but alleges that the commissioners decided to reduce the number of the police force and thereupon made and entered an order that three sergeants and thirteen patrolmen be discharged, the relator being among the latter. Relator claims that the commissioners are governed and controlled by the charter of Kansas City; while the commissioners claim that, at least in the respect here considered, their authority is found in the act creating and establishing a board of police commissioners for Kansas City.

The portion of the charter specially referred to, is section 22 of article 11, reading as follows: "The first employment of policemen shall be for a probationary term of six months; and the board of police may, in its discretion, discontinue their services at any time. Having served six months probationary service to the satisfaction of the board, such policemen may be appointed for a term of three years, and in case complaint be made against them, they shall be subject to removal only for cause, after a hearing by the board, and said board is hereby invested with exclusive jurisdiction in such matters. Whenever the board is satisfied that any person holding a commission under them is not a proper person to discharge the duties of a police officer, he may be discharged at any time without any complaint having been made against him."

The portion of the act of the legislature specially referred to by the commissioners is section 6, page 329, Laws 1874, reading as follows: "To enable said board to perform the duties imposed upon them, they are hereby authorized and required, as speedily as may be, to appoint, enroll and employ a permanent police force for the city of Kansas, which they shall equip and arm as they may judge necessary. The number of policemen to be so appointed and employed, exclusive of officers, shall at the first organization, be not exceeding the number now employed by the corporate authorities of the city

of Kansas; but the common council of said city shall have power to increase the police force at any time to any number recommended by the board of police commissioners; and said commissioners may reduce the present or any future number of police, as experience may warrant; *provided, however,* that for extraordinary emergencies the board of police may raise such additional force as the exigency may in their judgment demand. No person shall be appointed or employed as regular policemen or officer of police who shall have been convicted of, or against whom any indictment may be pending for, any offense the punishment for which may be confinement in the state penitentiary, nor shall any person be so appointed who is of notoriously bad character, or who is not a citizen of the United States, or who is not able to read and write the English language, or who does not possess ordinary physical strength and courage. The policemen shall be employed to serve for three years, and be subject to removal only for cause after a hearing by the board, who are hereby invested with exclusive jurisdiction in the premises. Any policeman whose term of service shall expire, and who during his appointment shall have faithfully performed his duty, shall, if otherwise qualified, be preferred by the board in making their new appointments."

Conceding that the city charter is the governing law, granting, limiting and controlling the power of the commissioners as regards the discharge of policemen, then the discharge of the relator without complaint or charges preferred against him, and without a hearing being given him, was wrongful and unauthorized, since the charter only provides for a discharge after a hearing. State ex inf. v. Vallins, 140 Mo. 523. That case involved the question whether the police commissioners of Kansas City could lawfully appoint Vallins to a probationary service of six months as chief of police. It was held that they could not, since

POLICE commissioners: state law v. Kansas City charter: dismissal of policeman.

the charter gave no such authority. The law of 1874 was not brought to the attention of the court and was not discussed or considered. If it had, the result doubtless, would have been the same, since there is likewise no authority given by that act for the probationary appointment of a chief of police. Judge Sherwood, in his reasoning and illustration of the point decided, announced the rule relating to the discharge of policemen under the charter as we have stated it.

But conceding that the law of 1874 is the controlling factor, then, we are of the opinion that for the purpose of *reducing the number of the police force,* the commissioners may, in their discretion, discharge the number decided upon without the formality of notice or a hearing. Such is the reading of the law.

The important question to determine and which, as we have just said, was not considered in the Vallins case, since it did not arise therein and was not referred to by court or counsel therefore, is, whether the Laws of 1874 and of 1875 and 1881 amendatory thereof, are yet in force and govern the board of police commissioners, and, in any point of substantial repugnancy, which must give way, the law or the charter. Kansas City is organized under a special charter adopted by its own people. In matters of purely municipal concern the provisions of the charter supersede the provisions of the general law on the same subject existing when the charter was adopted, when not inconsistent, or out of harmony, with the general law. Thus, though the general law of the state provided a procedure for the exercise of the power of eminent domain in the condemnation of streets, yet this was superseded by the provisions of the charter in that respect, those provisions preserving the same substantial rights to parties affected which were guaranteed by the general law. State ex rel. v. Field, 99 Mo. 352; Kansas City v. Oil Co., 140 Mo. 458.

While much important govermental power concerning matters of strictly municipal or local concern may be legally embodied in the charter, yet the charter must remain in subjection to the general law. This is constantly iterated by the supreme court in what are known as the Park cases. Kansas City v. Oil Co., 140 Mo. 458; Kansas City v. Ward, 134 Mo. 172; Kansas City v. Scarritt, 127 Mo. 642. In the Oil Company case it is said that whenever a charter so framed comes under judicial review the inquiry is, is it in harmony with and subject to the law of the state. It is there · further said, that the charter must not invade the province of general legislation, or attempt to *change the policy of the state.* In respect to all matters involving the relation of the city to the state and the full exercise of what is commonly known as the police power of the state, the act of the legislature will annul provisions of such a charter on the same subject. St. Louis v. Dorr, 145 Mo. 466.

There are a number of illustrations of these general statements. Thus, there was a conflict between the general law and the charter of St. Louis as to the method of extending taxes and it was held the charter must give way. State ex rel. v. Railway, 117 Mo. 1. In the same city there were specific provisions as to the licensing of dramshops and the collection of the revenue therefrom. In 1893 the legislature provided for the appointment by the governor of an excise commissioner who under the provisions of the act, took charge of that general subject *including the city license and revenue.* The act has been upheld and the city ordinances, passed under the charter, superseded. State ex rel. v. Bell, 119 Mo. 70. The same recognition of the rule that special charters like those of Kansas City and St. Louis are subject to the general law of the state is found in numerous other cases. State ex rel. v. Tolle, 71 Mo. 645; State ex rel. v. Miller, 100 Mo. 439; State ex rel. v. Higgins, 125 Mo. 364.

After the people of St. Louis had adopted their special charter the legislature passed an act concerning elections and for the appointment of a recorder of voters in all cities having a population of one hundred thousand or over, which included St. Louis. By the provisions of the charter and ordinances of that city it was the duty of the mayor thereof to appoint judges and clerks of election, ten day before election day. An election was about to take place in said city for president of the board of assessors. The mayor was engaged in appointing the judges and clerks and at the same time the recorder of voters, appointed by the governor under the act of the legislature, was also about to appoint men to the same positions. On an injunction to restrain the recorder the supreme court held that provisions of the charter and ordinances inconsistent with the act of the legislature were annulled. It was said by the court that the charter was subject to the law; and that cities acting under such charters were not to be considered as a sovereignty within a sovereignty. In illustration of its views the court made the following statement which is of special significance in the present controversy, viz.:

"At the time of the adoption of the scheme and charter, there was, and is now, a law of the state in force providing for a board of police commissioners in the city of St. Louis, consisting of five persons, of whom the mayor of the city is one, and the other four appointees of the governor, and confirmed by the senate. These commissioners have control of the entire police force of the city, and are invested with large powers affecting the local government of the city. Suppose that the charter of the city when framed and adopted, in conformity with the scheme authorizing it, had contained a provision for a board of police commissioners, consisting of five persons, one of whom should be the mayor and the other four his appointees, and investing them with the same power of control over the police force of the city which the law of the state invested in those appointed by the governor, which

would have prevailed, the law of the state or the charter provision? If the charter provision in that respect is to prevail the law of the state would then be subject to the charter in the face of the constitution, which declares that the charter shall be subject to the law of the state. Ewing v. Hoblitzelle, 85 Mo. 64.

From the foregoing ruling of the supreme court it is quite clear that the charter of Kansas City could not annul the state law in reference to police commissioners for such city and their powers and duties. We therefore hold that section 6 of the Act of 1874, page 329, measures the power and authority of the police commissioners in reference to the discharge of members of the police force. By that section, where there is no intention of reducing the force, but an object to dismiss one or more members for some reason pertaining to the member proposed to be discharged, it can only be done for cause shown after a hearing granted to the offending member. In this respect there is no conflict between the law and the charter.

But where, in the discretion and judgment of the board the force is more numerous than it should be, it has the additional power under the law to reduce the number by discharge from the service without notice or hearing. That the charter can not change the state law in this respect is apparent, unless we set up the charter as superior to the state law. To grant such potency to the charter we would be brought to the position, as stated by the supreme court, that the power of appointment could be taken from the governor and invested in some city functionary. And furthermore that a wholly different system of police could be introduced by the city, or indeed none at all; and thus the policy of the state be subverted.

That the charter has, in some respects, gone beyond its legitimate bounds is seen from its general scope and from more than one special provision. For instance, section 3 directs the governor to appoint and the senate to confirm the commissioners, and in the same way provides for the filling of

vacancies. In section 5, it assumes to regulate the matter of removal by the governor. The law makes a policeman an officer of the state as well as of the city. Sec. 18, Laws 1874, p. 333. The law establishing the police commissioners and the system of police under them is an evidence of the policy of the state with reference to the police of one of its principal cities and it can not be subverted by a local charter. An examination will disclose that the charter is mostly made up from provisions of the law, but there are some substantial differences, as we have pointed out herein, and these can not be allowed to supersede the law of the state specially addressed to the same subject.

A further reason why the judgment should be reversed is that there is a radical difference between the alternative and the peremptory writ. The alternative writ was that the commissioners should reinstate relator and that the president of the board should issue him a warrant for the sum of $770 as salary and should also issue to him a warrant for salary from "July 22, 1897, until he be reinstated." The writ was amended by striking out the latter clause. But the peremptory writ was still widely different from the alternative. It ordered a warrant for $373, instead of $770. When it was found that relator was not entitled to the amount (substantially) that he demanded and which was incorporated in the alternative writ, it disentitled him to the peremptory writ. For in this state "the greatest care is to be bestowed upon the framing of the mandatory clause, the rule being that the writ must be enforced in the terms in which it is issued or not at all." School Dist. v. Lauderbaugh, 80 Mo. 190. The relator must show that he is entitled to a performance of all the things specified and if he fails in any substantial part, there can be no peremptory writ. State ex rel. v. Railway, 77 Mo. 143; State ex rel. v. Baggott, 96 Mo. 63. And so we held in State ex rel. v. Field, 37 Mo. App.

MANDAMUS: peremptory must follow alternative writ: relator's burden.

83. And the St. Louis court of appeals has declared the same. State ex rel. v. Finley, 74 Mo. App. 213; State ex rel. v. Davis, 54 Mo. App. 447. This rule finds a just application to the facts of this case as disclosed by the petition for it is there stated that the relator demanded a warrant for the full sum of $770 when he was not entitled to one-half that sum.

We are cited to some authorities in New York which sustain the position that the peremptory need not follow the alternative writ in its command. People ex rel. v. Supervisors, 142 N. Y. 271. But in that state by statutory enactment, "the court, in awarding the peremptory writ, may mould it according to the just rights of all the parties." We have no like statute here and the rule with us is altogether different. There it seems a trial may be had to adjust the rights of the parties much as in an ordinary action at law. While here we hold more to the rule relating to mandamus as commonly understood.

The suggestion was made at the argument that respondent by his answer and testimony was the cause of the amount of the claim being reduced to the extent appearing in the record. We do not see how that could affect the legal phase of the point. The fact remains, as disclosed by the record, that relator was not entitled to the relief demanded by the alternative writ.

But it was said that in the absence of a bill of exceptions, and for aught that appears in the record, the trial court may have found from the evidence that the discharge was not in reduction of the force but was based on a desire to discharge relator and fill his place with another. One difficulty with this position is that the petition is based on an alleged violation of the charter in discharging relator without a hearing. It was relator's duty to have stated all facts necessary to entitle him to the issuance of the writ. If he relied on the fact that his discharge was not valid under the law of 1874, he should have

———: discharging policeman: relator's duty: pleading.

stated that his discharge was not for the purpose of reducing the police force. State ex rel. v. Governor, 39 Mo. 388; State ex rel. v. Hudson, 13 Mo. App. 61; Moses on Mandamus, 19; High on Extra. Leg. Rem., sec. 450; 2 Spelling on Extra. Relief, secs. 1643-1645. The general statement that relator's discharge was "wrongful," or was "unlawful," is a mere conclusion of the pleader and is not sufficient.

But if it should be granted that the discharge was not for the purpose of reducing the force and that the place was filled by another appointee, there would still be a barrier to the relief claimed by relator. He is asking for the payment of salary for a period when he was not in possession of the office occupied by another, before his right to the office has been adjudicated by a judgment of reinstatement. It has been and is an unsettled question whether an officer can recover unearned fees or salary. But it ought to be clear that an action for the salary can not be maintained by the party out of possession of the office before his right to the office has been judicially ascertained, and that it can not be ascertained by the mere action for the salary where the occupant of the office can not be a party. The question has recently undergone a thorough discussion in the supreme courts of Delaware, Kentucky and Oregon; the two latter being cases of discharged policemen and the first being the case of discharged register of births and secretary to the board of health. The cases are logically and ably reasoned and the conclusion reached that such action can not be maintained. Lee v. Mayor, 40 Atl. Rep. 663; Gorley v. Louisville, 47 S. W. Rep. 263; Selby v. Portland, 14 Ore. 243.

There is nothing in the cases of Sanford v. Kansas City, 69 Mo. 466, and Riley v. Kansas City, 31 Mo. App. 439, which in the least militates against this position. Whatever reasonable inference is to be drawn from them favors it. In the Sanford case the salary was earned and unpaid. In the

*——: offices and and officers: reinstatement: salary.*

Riley case a portion of the amount claimed and denied was for salary after wrongful dismissal. It is held that the action could not be maintained. It is further held that if the plaintiff in that case was wrongfully discharged his remedy was mandamus for reinstatement, but it is not held that mandamus for a warrant could be maintained before such reinstatement was had.

The claim made by relator that in the absence of a bill of exceptions we could not reverse for error on the record proper is not well founded. The authorities cited are not considered in point.

The result of our consideration of the case is to reverse the judgment. All concur.

## ON MOTION TO TRANSFER TO SUPREME COURT.

ELLISON, J.—Since the decision in this cause relator has asked us to transfer it to the supreme court on the ground that we have no jurisdiction under the constitution vesting jurisdiction in the supreme court "in cases involving  *  *  * the title to any office under this state," relator now stating that the case involves the title to the office of policemen.

The case was presented to us by both parties under the assumption that it did not involve the title to an office, but was rather a proceeding to reinstate relator in an office from which he had been unlawfully removed and deprived. We concede that the office of policeman is an "office under this state," but deny that this proceeding involves the title to such office. That the office is an "office under this state" we think has been decided by the supreme court. State ex rel. v. Rombauer, 101 Mo. 499; Britton v. Steber, 62 Mo. 370. It may, however, be remarked that if the position held all along by relator that policemen are city officers controlled exclusively by

OFFICES and officers: policeman: appellate jurisdiction.

the charter and ordinances, then the supreme court, under the cases just cited, to which he now seeks to have the case sent would not have jurisdiction. But as we are of the opinion that such officers are primarily brought into existence and governed by the state law, we conclude that under the rulings of the supreme court they are officers "under this state," just as constables and sheriffs are. Authorities *supra*. They do not, however, fall under the other clause of the constitution referring to "state officers" in the sense that the courts of appeals would be deprived of jurisdiction merely by their being parties to a cause. State ex rel. v. Dillon, 90 Mo. 229; State ex rel. v. Spencer, 91 Mo. 206.

Being officers under this state, the question is, does the case involve the title to the office? If it involves the title, then relator should be denied the writ since mandamus is not

a proper proceeding in such cases. State ex
MANDAMUS: offices and officers: title to office: reinstatement.
rel. v. Lesueur, 126 Mo. 416; State ex rel. v. John, 81 Mo. 13; State ex rel. v. Draper, 48 Mo. 213; St. Louis v. Sparks, 10 Mo. 117. But it was held in the case last cited that mandamus is a proper remedy to *reinstate an officer*. And this is unquestionably the law for in such proceeding the title is not involved. McDermott v. Miller, 45 N. J. L. 251; People ex rel. v. Head, 25 Ill. 325; Ex parte Wiley, 54 Ala. 226; Ex parte Lusk, 82 Ala. 519; High on Ex. Legal Rem., sec. 67. Angell & Ames on Corps., section 702, say: "The writ, however, confers no title on the person admitted, its sole operation being to put him in a situation to enforce his former title if sufficient in law." And: "Though a mandamus gives no title, yet it will not be granted when there is an officer *de facto*." Ib. "In appropriate cases mandamus will lie to compel the proper officers of a municipal corporation *to admit to the possession* of his place one elected to any municipal or corporate office. Mandamus is not considered in England the proper remedy to try the

right to a public or municipal office and a mandamus to admit *gives no title* to the person admitted, but it enables him to try or enforce his right." 2 Dillon Mun. Corp., sec. 842.

In this case there has been no pretense of a controversy over the title to the office but merely for reinstatement to an office from which it was charged that relator had been unlawfully removed, and for the salary accrued, the latter being the principal object. While it would ordinarily be necessary for relator to exhibit a *prima facie* title in order to show his right to reinstatement, yet there is no adjudication which involves the title, or which would be *res adjudicata*. The proceeding is merely possessory. In this case the alternative writ sets out relator's title and the return of respondent admits it. *The only controversy between the parties is the power of removal.*

The courts of appeals not only have no jurisdiction "in cases involving the title to an office," but they likewise have no jurisdiction in cases "involving title to real estate." Yet the uniform ruling of the supreme court has been that unless the judgment to be rendered in the given case itself directly affected the title to real estate, the title was not considered involved. And this is true even though it should become necessary to examine into the validity of a title to determine the rights of the parties. Cases involving vendors' liens, mechanics' liens, the foreclosure of mortgages and tax bills, though in a sense bearing upon title, do not involve it, in the sense of the constitution. Paving Co. v. Hezel, 138 Mo. 228; May v. Mortgage Co., 138 Mo. 447, and the cases cited in each.

JURISDICTION: court of appeals: offices and officers: reinstatement.

2. Again, the alternative writ shows that relator's term expired on May 4, 1898; and the record shows that the cause was not heard until the seventeenth day of March, 1898. It thus appears that so far as the title to the office

is concerned the term was about to expire
MANDAMUS: rein-  when the cause was heard by the circuit court
statement to
office, expiring  and would certainly expire before an appeal
term: fruitless
proceeding.  could be determined, and that it has now long
since expired. Relator can not, therefore,
be reinstated and that branch of the case is necessarily no
longer involved. To grant the writ for reinstatement would
be nugatory. It is a well settled rule that whenever the writ
would be unavailing, or fruitless if granted, it will be with-
held. It has been so determined in Missouri. State ex rel. v.
Rodman, 43 Mo. 256; State ex rel. v. Lafayette Co. Ct., 41
Mo. 38. And this is the general law. High on Extraordi-
nary L. Rem., secs. 14, 64; Ex parte DuBose, 54 Ala. 281;
Williams v. County Com., 35 Me. 345; O'Hara v. Porsell, 80
N. C. 109; People v. Supervisors, 15 Barb. 607, 617; State v.
Perrine, 5 Vroom, 254. "It must be fatal to every such ap-
plication, where the uncontested facts show, satisfactorily and
clearly, that it is practically not within the power of the re-
spondent to perform the act required. The solemn mandate
of a court of justice should never be invoked to an end that is
obviously useless." Ex parte Shandies, 66 Ala. 136. The
foregoing rule has been applied in several states to where a
term of office had expired or would expire before the writ
could be made effective. Woodbury v. County Com's, 40 Me.
304; Fitzpatrick v. Kirby, 81 Va. 467; Christman v. Peck,
90 Ill. 150.

3. Among the reasons stated for the transfer is that the
decision is contrary to that of the supreme court in State ex
inf. v. Vallins, 140 Mo. 523. If either member of the court
deemed this to be true we would of course sus-
APPELLATE prac-  tain the motion. But as in our opinion that
tice: certifying to
supreme court.  case has no application to this controversy it
affords no ground for a removal of the cause.
The motion is overruled. Smith, P. J., concurs; Gill, J.,
concurs except that he believes the proceeding for reinstate-
ment did originally involve the title to an office.